STATE OF NORTH CAROLINA v. FRANKIE RAY SMITH .

No. COA01-1154

(Filed 3 September 2002)

**1. Evidence— indecent liberties prosecution—possession of pornography—nonprejudicial error**

The trial court in a prosecution for indecent liberties and first-degree sexual offense erred in the admission of defendant's possession of pornographic magazines and videos where there was no evidence that defendant had viewed the materials with the victim, nothing more than speculation that defendant asked the victim to view the materials, the testimony which the

materials were supposed to corroborate was never presented to the jury, and defendant did not waive his objection by testifying about the material on cross-examination because he had timely objected when the State began the line of questioning. However, this error was not prejudicial because there was no reasonable possibility of a different result without the evidence.

## 2. Evidence— indecent liberties—victim watching movie about false accusation—excluded

There was no error in a prosecution for indecent liberties and first-degree sexual offense in the exclusion of evidence that the victim had watched a movie in which a girl with an unrequited crush on an older man made a false accusation of rape. There was no testimony tending to show that the details of the movie's plot were similar to the facts of this case, and there was no evidence that the victim had discussed the movie with others or had indicated that the movie led her to consider making an accusation against defendant.

## 3. Appeal and Error— exclusion of testimony—no request to reconsider ruling—waiver

The defendant in a prosecution for indecent liberties and first-degree sexual offense waived the right to argue on appeal that the court erred by excluding testimony by a neighbor of the victim that the victim had falsely accused him of an improper touching four years earlier where defendant failed to request the court to reconsider its ruling prohibiting testimony by the neighbor after the court changed its earlier ruling to permit questioning of the victim about the prior accusation.

## 4. Evidence— indecent liberties—sexual offenses—child victim—prior sexual misconduct with babysitter

Evidence that defendant had previously engaged in sexual misconduct with a 15-year-old babysitter was admissible under Rule 404(b) in a prosecution for taking indecent liberties and sexual offense with his 12-year-old stepdaughter to show the absence of mistake and defendant's plan, scheme or design. N.C.G.S. § 8C-1, Rule 404(b).

## 5. Criminal Law— presence at trial—defendant nauseated—continuance denied

The trial court did not violate a defendant's right to be present at trial by refusing to grant a continuance and refusing

STATE v. SMITH

[152 N.C. App. 514 (2002)]

to grant a mistrial where defendant complained of nausea, was examined by a doctor who recommended that the trial not continue that day, defendant was given medicine which he indicated made him sleepy, and the court made its decision based on personal observation of defendant.

Appeal by defendant from judgments entered 16 March 2001 by Judge W. Russell Duke, Jr., in Dare County Superior Court. Heard in the Court of Appeals 23 May 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Jill B. Hickey, for the State.*

*Cheshire, Parker, Schneider, Wells & Bryan, by Joseph B. Cheshire, V, and John Keating Wiles, for defendant-appellant.*

CAMPBELL, Judge.

Defendant was indicted on two counts of taking indecent liberties with a child and one count of first degree sex offense with a female child under the age of thirteen. Following a jury trial, defendant was convicted on all three counts. Defendant was sentenced to three concurrent terms of imprisonment. Defendant appeals.

The State's evidence tended to show that the alleged victim, "A.R.," was twelve years old at the time of the alleged sexual offenses and fourteen years old at the time of the trial. A.R. testified that defendant, her stepfather, often made comments about the way she dressed ("[Y]ou should wear pants that are tighter because they look better on your butt."), about her breasts, and about her "butt." These comments made A.R. feel uncomfortable. On 22 February 1999, A.R.'s mother spent the night away from home, while A.R. stayed at home with defendant and defendant's daughter, Julie. Sometime around midnight, A.R. was lying in bed when she heard defendant come down the hallway and into her bedroom. Defendant allegedly pulled down the covers, ran his hand up A.R.'s shirt, and rubbed her left breast for approximately ten minutes. A.R. did not move and did not let defendant know that she was awake because she was afraid that he would hurt her. A.R. did not initially tell anyone about this first alleged incident of sexual abuse.

The second alleged incident of sexual abuse occurred on 1 April 1999. A.R. testified that her mother had not returned home from work and that she and Julie were packing for a trip to Virginia. A.R. went

into defendant's bedroom to tell him that Julie's bed had broken. A.R. sat down on the hope chest while defendant was lying in bed watching television. A.R. testified that she got a cramp in her calf and started rubbing it. Defendant then picked her up from the hope chest and laid her on the bed on her stomach. Defendant began rubbing her calf and then "worked his way up and into [her] shorts and into [her] underwear." Defendant then stuck his finger in A.R.'s vagina and kept it there for "maybe five minutes." After he removed his finger from A.R.'s vagina, defendant asked her, "Are you mad at me? Did I hurt you? Are you mad at me, [A.R.]?" A.R. pretended to be asleep because she was afraid of what defendant might do to her. Defendant went into the bathroom and A.R. remained on the bed pretending to be asleep. When defendant came out of the bathroom, he again asked, "[A.R.], are you mad at me? [A.R.], did I hurt you?" A.R. continued to act as if she were asleep. Defendant then picked her up, carried her into her own bedroom, and laid her on the bed.

Jacqueline Joiner ("Jacqueline"), A.R.'s aunt, testified that A.R. told her about the April 1 incident approximately three days after it occurred. According to Jacqueline's testimony, A.R.'s exact words to her were, "[Defendant] stuck his finger in me." Jacqueline told A.R.'s mother, Denise Joiner, about the alleged April 1 incident the following day.

Denise Joiner ("Denise") testified that she remembered coming home on the night of 1 April 1999 and noticing that A.R. had been crying. Denise asked what was wrong, to which A.R. responded, "I just don't feel well, mom . . . I just—I don't know, I just don't feel good." Denise further testified that, when she questioned A.R. about the alleged April 1 incident, A.R. described the incident consistently with her testimony at trial. Denise reported the alleged sexual abuse to the Dare County Sheriff's Office and took A.R. to see a therapist. During the investigation, A.R. reported the alleged· February incident in which defendant had rubbed her left breast.

Two of defendant's co-workers, Jeff Moss ("Moss") and Donald Rouse ("Rouse"), also testified for the State. Both Moss and Rouse testified that defendant had made sexual comments about A.R. while at work. Moss testified that defendant had made comments about A.R.'s breasts and "how well she looked for her age," and that defendant told him that he had once become aroused due to the T-shirt and underwear that A.R. wore around the house. Further, Moss testified that defendant had made the comment "that there was no blood in the child to him, that it could lead to something."

Rouse also testified that defendant made comments about A.R.'s breasts. In addition, Rouse testified that defendant told him of an occasion on which A.R. got out of the shower and was walking through the living room with an oversized T-shirt on and that defendant made the comment "that if she didn't stop dressing like that that something was going to happen." Rouse further testified that defendant once made the comment, "Old enough to bleed, old enough for me." As a result of defendant's sexual comments, Rouse filed a complaint against defendant with social services.

Michelle Zimmerman ("Zimmerman"), a psychiatrist certified as a specialist in child psychiatric nursing and tendered and accepted as an expert in child sexual abuse, testified that she examined A.R. over the course of several months beginning in August 1999. Zimmerman stated that A.R. told her that defendant had come into her room in February and put his hands up her sweatshirt, and that on 1 April 1999 she had been digitally penetrated by defendant. Zimmerman diagnosed A.R. as suffering from post-traumatic stress disorder, and testified that sexual assault was a common cause of post-traumatic stress disorder. Zimmerman further testified that it was not unusual for a child sexual abuse victim not to immediately disclose the abuse due to fear of getting in trouble or retaliation.

Jennifer Marquis ("Marquis") also testified for the State. Marquis stated that she knew defendant when she was a teenager and would occasionally babysit for him. On one occasion when Marquis was fifteen years old, she went over to defendant's house to babysit. Defendant left for a short time and then returned to fix supper. Marquis and defendant ate supper and defendant made them mixed drinks. After drinking a mixed drink, Marquis went out on the patio with defendant and smoked some marijuana. The two then came back inside and defendant started trying to fool around with Marquis but Marquis was not interested. Defendant pulled Marquis' pants off and performed oral sex on her. Marquis testified that she did not want defendant to do so but that she did not fight him off. The next day Marquis was lying on defendant's bed while he took a shower. When he got out of the shower, defendant lay down beside Marquis and began trying to talk her into "doing stuff." Marquis again told defendant that she did not want to mess around with him. Nonetheless, defendant pulled Marquis' pants down and had sexual intercourse with her. Marquis testified that she told defendant she did not wish to have sex with him, but that she did not "hit him or anything like that" in an attempt to fight him off. Marquis did not report her two sexual

encounters with defendant until the investigation of defendant's alleged sexual abuse of A.R. She testified that she did not feel like she had been raped and that she felt she had put herself in position to allow defendant's actions to occur. She further testified that she continued to see defendant from time to time following the two sexual encounters but that she never had another sexual encounter with him. Marquis' testimony was admitted under Rule 404(b) of the North Carolina Rules of Evidence for the purpose of showing an absence of mistake on the part of defendant, defendant's unnatural attraction to young girls, and a common plan or scheme to take advantage of young girls in situations where he had parental or adult responsibility over them.

Over defendant's numerous objections, the State also admitted testimony concerning defendant's possession of pornographic magazines and videos at home and at work.

Defendant denied all allegations of sexual misconduct and presented witnesses who testified about his reputation. Defendant also presented testimony attacking the credibility of several of the State's witnesses, including the victim, Donald Rouse and Jennifer Marquis. Defendant contended that A.R. had fabricated the allegations against him and that A.R. had previously made false accusations of a somewhat similar nature against another man.

Defendant raised twenty-six assignments of error in the record on appeal, several of which defendant has failed to support with argument in his brief. Those assignments of error are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6) and we only address those assignments of error brought forward in defendant's brief.

[1] Defendant first contends that the trial court erred in admitting evidence of his possession of pornographic magazines and videos. Defendant contends that such evidence was not relevant to the question of whether defendant committed the alleged sexual offenses, and in the alternative, even if the evidence were relevant, its probative value was substantially outweighed by the danger of unfair prejudice under Rule 403 of the North Carolina Rules of Evidence. Defendant additionally alleges that "[t]he only purpose of such inquiries was to besmirch the Defendant's character."

The State argues that defendant waived his right to object to the admission of the evidence concerning his possession of pornographic magazines and videos, and in the alternative, the evidence was rele-

**STATE v. SMITH**

[152 N.C. App. 514 (2002)]

vant and admissible under Rule 404(b) to show "defendant's intent to engage in a sexual relationship with [A.R.]." The State additionally contends that the evidence was admissible to corroborate the *voir dire* testimony of Jennifer Marquis.

On direct examination, the State asked A.R. if defendant had ever asked her to look at a pornographic videotape. A.R. testified that defendant once handed her a video and said, "Watch this." A.R. asked defendant what the video was and defendant responded, "Just watch it." A.R. testified that she refused to watch the video because she *thought* it was a pornographic movie. Defendant's timely objection to this testimony was overruled by the trial court. A.R. was then asked, again over defendant's timely objections, if she knew whether defendant kept pornographic videos and magazines in the house. A.R. responded, "I *think* so, I'm almost positive." The trial court then allowed defendant's motion to strike to A.R.'s speculation that she *thought* defendant kept pornographic videos and magazines in the house.

The State also questioned A.R.'s mother, Denise Joiner, about whether defendant kept pornographic videos and magazines in the house and whether he watched the videos. Over defendant's timely objections, Denise answered in the affirmative to both questions. Denise described the pornographic magazines as "Playboy, Hustler-type magazines."

The State also questioned two of defendant's co-workers, Jeff Moss and Donald Rouse, about whether defendant kept pornographic magazines at his workplace. Defendant again objected and the co-workers testified that defendant kept pornographic magazines in his toolbox. Defendant's sister, Serena Sellers, was also questioned by the State whether defendant kept pornographic materials in the town-house in which the two of them lived. As with the other instances, defendant made a timely objection.

During the State's cross-examination of defendant, he was asked whether he kept pornographic magazines and videotapes in the house he shared with A.R. Defense counsel again objected and was overruled. Defendant then answered the State's questions in the affirmative but asked if he could explain his answer, which the trial court allowed. Defendant then testified:

I have two—I had three years of Playboy magazines still in the plastic, okay, for purposes of collector items or what not. I had

these magazines since the first three months I lived with Denise and [A.R.]. I had these things packed in a box about yea big (demonstrating) wrapped in duct tape. They stayed in the shed out back away from the house in Chesapeake and downstairs where you drive your car up underneath the beach box-type house we lived in there was four storage doors. That is where that box with the two movies and the pornographic magazines were packed up.

Defendant went on to testify that he had one pornographic magazine in the house, but no pornographic videos, and that he had never asked A.R. to watch at a pornographic video. Defendant also testified that he had one Penthouse magazine in his toolbox at work.

Under Rule 401 of the North Carolina Rules of Evidence, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. R. Evid. 401 (2001). As a general rule, evidence of a defendant's prior conduct, such as the possession of pornographic videos and magazines, is not admissible to prove the character of the defendant in order to show that the defendant acted in conformity therewith on a particular occasion. N.C. R. Evid. 404(b) (2001). However, such evidence of prior conduct is admissible so long as it is relevant to some purpose other than to show the character of the defendant and the defendant's propensity for the type of conduct for which he is being tried. *See State v. Rael*, 321 N.C. 528, 534, 364 S.E.2d 125, 129 (1988); *State v. Morgan*, 315 N.C. 626, 637, 340 S.E.2d 84, 91 (1986); *State v. Doisey*, 138 N.C. App. 620, 626, 532 S.E.2d 240, 244, *disc. review denied*, 352 N.C. 678, 545 S.E.2d 434 (2000), *cert. denied*, 531 U.S. 1177, 148 L. Ed. 2d 1015 (2001). Examples of such proper purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." N.C. R. Evid. 404(b).

After careful review of the record, we are unable to agree with the State's contention that the evidence of defendant's possession of pornographic magazines and videos was properly admitted as evidence of "defendant's intent to engage in a sexual relationship with [A.R.]," or as evidence of defendant's preparation, plan, knowledge or absence of mistake. *See Doisey*, 138 N.C. App. at 626, 532 S.E.2d at 244 (evidence that the defendant placed a camcorder in a bathroom used by children and taped the activities in the bathroom was not properly admitted to show "design or scheme to take sexual advan-

tage of children"); *State v. Hinson*, 102 N.C. App. 29, 36, 401 S.E.2d 371, 375 (1991) (evidence that the defendant possessed photographs depicting himself in women's clothing, dildos, lubricants, vibrators and two pornographic books, was not properly admitted to show "proof of intent, preparation, plan, knowledge and absence of mistake," in sexual offense case involving seven-year-old victim); *State v. Maxwell*, 96 N.C. App. 19, 24, 384 S.E.2d 553, 556 (1989) (evidence that the defendant frequently appeared nude in front of his children and had fondled himself in presence of daughter was not properly admitted to show "defendant's plan or scheme to take advantage of his daughter"). Evidence of defendant's mere possession of pornographic materials does not tend "to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." N.C. R. Evid. 401. The *only* evidence that defendant attempted to expose A.R. to pornographic materials was A.R.'s testimony that defendant once asked her to watch a video but would not tell her what the video was about. A.R. then speculated that she *thought* the video was a pornographic movie. However, the trial court allowed defendant's motion to strike A.R.'s speculation. There was no evidence presented that defendant showed A.R. pornographic materials at the time of the alleged crimes or that the two of them had ever viewed pornographic materials together. Without more, A.R.'s mere speculation that defendant had attempted to get her to watch what she *thought* was a pornographic movie, is not enough to make the evidence of defendant's possession of pornographic materials relevant to the crimes with which he was charged. *But see Rael*, 321 N.C. at 534, 364 S.E.2d at 129 (evidence of pornographic videos and magazines seized from the defendant's house properly admitted to corroborate the victim's testimony that the defendant had shown him such material at the time of the alleged crimes); *State v. Williams*, 318 N.C. 624, 632, 350 S.E.2d 353, 358 (1986) (evidence that the defendant had taken his daughter, the victim, to an x-rated movie and told her to watch the scenes depicting graphic sexual acts properly admitted to prove the defendant's "specific sexual intent, preparation and plan with regard to his daughter").

We agree with defendant's contention that the only purpose of such evidence was to impermissibly inject defendant's character into the case to raise the question of whether defendant acted in conformity with his character at the times in question. As a rule, substantive evidence of a defendant's past misconduct is generally excluded when its only logical relevancy is to suggest the defendant's propen-

sity or predisposition to commit the type of offense for which he is charged. *State v. Shane*, 304 N.C. 643, 653-54, 285 S.E.2d 813, 820 (1982); *Maxwell*, 96 N.C. App. at 25, 384 S.E.2d at 557. We hold that evidence of defendant's possession of pornographic materials, without any evidence that defendant had viewed the pornographic materials with the victim, or any evidence that defendant had asked the victim to look at pornographic materials other than the victim's mere speculation, was not relevant to proving defendant committed the alleged offenses in the instant case and should not have been admitted by the trial court.

We further disagree with the State's contention that the evidence was admissible to corroborate the *voir dire* testimony of Jennifer Marquis that she and defendant had once looked at a pornographic magazine together. This testimony was never presented to the jury and thus cannot be the basis for admission of otherwise irrelevant testimony. Finally, we disagree with the State's contention that defendant waived any objection to the admission of evidence concerning his possession of pornographic materials by testifying on cross-examination as to such possession. The record shows that defense counsel consistently objected to questions concerning defendant's possession of pornographic materials throughout the trial. When the State asked defendant on cross-examination whether he kept pornographic magazines in the house, defense counsel again objected. The trial court overruled defense counsel's objection and defendant answered the question. Defendant then testified to his possession of both pornographic magazines and videotapes. Having timely objected when the State began its line of questioning concerning defendant's possession of pornographic materials, defendant was not required to enter another objection. Accordingly, defendant did not waive objection to the admission of this evidence.

However, we agree with the State that the trial court's admission of evidence of defendant's possession of pornographic material does not rise to the level of prejudicial error under N.C. Gen. Stat. § 15A-1443. The State presented A.R.'s testimony that defendant came into her room in February 1999, placed his hand up her shirt, and rubbed her breast. A.R. further testified that on 1 April 1999, defendant inserted his finger in her vagina. A.R.'s mother testified that when she came home on the night of 1 April 1999 she noticed that A.R. had been crying and that something was wrong. A.R.'s mother also testified that A.R.'s statements to her concerning what defendant had done on April 1 were consistent with A.R.'s testimony at trial.

Michelle Zimmerman also testified that A.R.'s statements to her concerning the alleged sexual abuse were consistent with A.R.'s testimony at trial. Zimmerman also provided expert testimony that, following the alleged instances of sexual abuse, A.R. suffered from post-traumatic stress disorder, which Zimmerman testified can be caused by sexual assault. Finally, the State presented evidence that defendant had made sexually graphic and suggestive comments about A.R. to two of his co-workers. In light of this evidence, we hold that defendant has not shown a reasonable possibility that, had the trial court not admitted evidence of his possession of pornographic videos and magazines, a different result would have been reached at the trial. *See* N.C.G.S. § 15A-1443. Admission of the evidence, therefore, was not prejudicial error entitling defendant to a new trial.

**[2]** Defendant next contends that the trial court erred in not allowing testimony from A.R.'s mother that A.R. had watched the movie *Crush*. Defendant argues that testimony about the movie *Crush* would have corroborated defendant's theory of defense—that A.R. had fabricated the allegations against him in order to further her own interests.

On cross-examination, defense counsel asked Denise Joiner if A.R. had watched *Crush* a day or two before the alleged April 1 incident. The State objected. The trial court removed the jury from the courtroom and conducted a *voir dire* hearing. Denise testified that she and A.R. had watched the movie together, that A.R. had seen the movie more than once, but that she wasn't sure about the time frame between the last time A.R. watched *Crush* and the alleged April 1 incident. Denise also testified about the plot of the movie as follows:

> It's a girl who has a crush on this man that moved into their guesthouse or whatever, she had a crush on him and she wanted him to pay her attention and he didn't. I mean, he did pay her attention but not to the—the magnitude that she wanted and she did ugly things to people that were in his life, his girlfriend and things like that. And initially she said that he had raped her when he had not.

After hearing Denise's testimony, the trial court sustained the State's objection to the admission of any evidence concerning the fact that A.R. had watched the movie. The record does not state the basis of the trial court's decision to sustain the State's objection.

Defendant contends that evidence that A.R. had watched the movie *Crush* was relevant to corroborate other evidence tending to

show that A.R. was disgruntled over her mother's marriage to defendant, was unhappy about moving to North Carolina, and wanted to return to Virginia. We disagree.

The testimony before the trial court concerning the movie *Crush* only showed that A.R. had watched it on more than one occasion and that the plot involved a girl who made a false rape accusation against an older man who would not pay enough attention to her. There was no testimony tending to show that the details of the movie's plot were similar to the facts in the instant case. In fact, the two situations appear to be dissimilar, in that here A.R. was allegedly sexually abused by her stepfather, to whom there is no evidence that she was in any way attracted, while in the movie the young girl was attracted to the older man and was upset that the man would not pay enough attention to her. In addition, there was no evidence presented that A.R. had discussed the movie with her mother, or others, or had in any way indicated that the movie made her consider making an accusation against defendant in order to further her own interests. Accordingly, we agree with the State that evidence concerning A.R.'s viewing of *Crush* was not relevant and was properly excluded.

[3] Defendant next contends that the trial court erred in not allowing testimony by A.R.'s former neighbor that A.R. had falsely accused him of an improper touching four years prior to defendant's alleged acts of sexual abuse. Defendant maintains that the neighbor's testimony was admissible to show A.R.'s knowledge of how a young girl could raise accusations against a man with impunity and her intent and plan to make such accusations against defendant.

On cross-examination, defense counsel attempted to ask A.R. about her earlier accusation of improper touching against the neighbor. The State objected and the jury was removed from the courtroom. Defense counsel explained that he intended to question A.R. about the accusation and that he also intended to call the neighbor to the stand to deny that the alleged incident took place. The trial court conducted a *voir dire* hearing in which A.R. testified that the neighbor touched her on the abdomen, kissed her on the cheek, and told her how pretty she was. The alleged incident occurred when A.R. was nine years old. Following arguments of counsel, the trial court first ruled under Rule 412 of the North Carolina Rules of Evidence that it would not allow the testimony of the neighbor, but that it would allow defendant to question A.R. about the accusation. Before bringing the jury back in, the trial court reconsidered the issue and ultimately concluded under Rule 403 of the North Carolina Rules of Evidence that

he would not allow defendant to question A.R. about the prior accusation because of the likelihood that it would confuse the jury.

Later in the trial, during the direct examination of defense witness Serena Sellers, defendant's sister, the trial court excluded her testimony concerning A.R.'s previous "allegation against [the] neighbor for some touching that proved to be false." However, on redirect examination, Serena Sellers testified without objection that Denise Joiner, A.R.'s mother, told her that A.R.'s previous allegation against the neighbor was a "false report." Serena Sellers then testified at length about the issue on redirect and recross.

At the close of defendant's case, apparently as a result of the testimony of Serena Sellers, the trial court informed the jury that it had reconsidered its earlier ruling and would now allow defendant to question A.R. concerning the previous accusation against the neighbor. A.R. was then questioned by both defense counsel and the State concerning the previous accusation. Following A.R.'s testimony, defendant did not ask the trial court to further reconsider its earlier ruling that the neighbor not be allowed to testify. Having failed to offer the testimony of the neighbor, or otherwise request that the trial court allow the neighbor to testify at that time, defendant waived his right to argue on appeal that the trial court erred in excluding the neighbor's testimony.

[4] Defendant next contends that the trial court erred in allowing the testimony of Jennifer Marquis concerning defendant's previous sexual activity with her when she was fifteen years old.

On *voir dire*, Marquis testified that she had two sexual encounters with defendant while she was babysitting for him. One night, after the two of them consumed mixed drinks and smoked marijuana together, defendant started trying to fool around with Marquis. Marquis testified that she told defendant she was not interested. Nonetheless, defendant pulled Marquis' pants off and performed oral sex on her. Marquis testified that she told defendant she did not want him to do so but that she didn't fight him off. The next morning, Marquis was lying on defendant's bed waiting for him to take a shower so he could take her home. When defendant got out of the shower, he lay down beside Marquis and tried to start "messing around." Marquis again testified that she told defendant she was not interested. Defendant pulled down her pants and had sexual intercourse with her. Marquis again testified that the sexual encounter was not consensual but that she did not attempt to fight defendant.

Following Marquis' testimony on *voir dire*, the trial court decided to allow Marquis' testimony under Rule 404(b). The trial court concluded that the evidence was relevant to show absence of mistake and a common plan or scheme, specifically that defendant took advantage of young girls in situations where he had parental or adult responsibility for them. The evidence was also admitted to show defendant's unnatural attraction to young girls. Following Marquis' testimony to the jury, the trial court gave a proper limiting instruction that the evidence was only to be considered for the limited purpose of showing an absence of mistake and defendant's plan, scheme, or design.

The courts of this State have been markedly liberal in admitting evidence of prior sexual misconduct of a defendant for the purposes cited in Rule 404(b). *See State v. Artis*, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *vacated on other grounds by Artis v. North Carolina*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990); *State v. Frazier*, 319 N.C. 388, 390, 354 S.E.2d 475, 477 (1987). The use of evidence permitted under Rule 404(b) is guided by two constraints: similarity and temporal proximity. *Artis*, 325 N.C. at 299, 384 S.E.2d at 481. When the features of the earlier act are similar to the offenses with which the defendant is currently charged and the stretch of time between the instances is not too remote, such evidence has probative value. *Id.* The similarity between the prior conduct and the crime with which the defendant is charged "need not rise to the level of the unique and bizarre, but must tend to support a reasonable inference that the same person committed both the earlier and the later acts." *State v. Gary*, 348 N.C. 510, 521, 501 S.E.2d 57, 65 (1998).

In the instant case, defendant was charged with sexual misconduct with a twelve year old which consisted of rubbing her breast and digitally penetrating her vagina. Marquis testified that, when she was fifteen years old, defendant had sexual intercourse and performed oral sex on her without her consent. While this Court appreciates the age difference between Ms. Marquis and the victim in the instant case, and the fact that Ms. Marquis never reported the alleged sexual encounters between her and defendant to the authorities until the investigation in the instant case, we conclude that those distinctions go to the weight of Ms. Marquis' testimony and not to its admissibility. We conclude that defendant's conduct with the two women was sufficiently similar and proximate in time to support its admission under Rule 404(b).

We write further to voice our disapproval of the trial court's refusal to let defense counsel question Ms. Marquis on *voir dire*, as well as the trial court's failure to show on the record that it performed the balancing test set forth under Rule 403. However, we do not feel that either of these mistakes rises to the level of error. Assuming, *arguendo*, that these mistakes were error, we conclude that they do not rise to the level of prejudicial error under N.C. Gen. Stat. § 15A-1443 in light of the other convincing evidence presented at trial.

[5] In defendant's final contention, he argues that the trial court abused its discretion and violated his constitutional right to be present at trial in refusing to grant a continuance or mistrial due to defendant's illness. We disagree.

On one of the days of trial, defendant twice ran out of the courtroom to go to the restroom. Defense counsel subsequently informed the trial court that defendant was nauseated and moved that the trial be continued until the next day. The trial court agreed to let defendant see a doctor but indicated that he would not continue the trial if the only problem was defendant's nervous stomach. The trial court allowed the examination of the witness on the stand to be completed and recessed court to allow defendant to see a doctor.

Defendant was examined by a doctor during the recess. The doctor wrote the following note, which was presented to the trial court:

In re: Franklin Smith [Defendant]

Mr. Smith was found to have a highly elevated blood pressure. He needs further evaluation by his own physician. In addition, he was treated for the nausea and vomiting. He should not continue with his court today.

The note was signed, Walter Holton, M.D. Defense counsel informed the trial court that the doctor had treated defendant's nausea with Phenergan 25, which defense counsel contended was a sedative. The trial court was also informed that defendant's blood pressure was 152 over 118 and approximately fifteen minutes later was 145 over 105.

The State then called to the stand the sheriff's deputy who had escorted defendant to the doctor. The deputy testified that defendant had predicted that his blood pressure would be 160 over 108 and that defendant told the nurse that he had suffered from a blood pressure

**STATE v. SMITH**

[152 N.C. App. 514 (2002)]

problem for quite awhile. Following arguments of counsel, the trial court made the following ruling:

> The Court has observed the defendant, has observed his assistance to you this morning and in the last five minutes. And also would make the personal observation that he looks no different than he has looked the whole week. Been red-faced the whole week. Also, the Court will find that he knew about his high blood pressure, that he has been medicated for the nausea and that he is able to assist you in the defense of the matter and the motion to continue is denied.

Following this ruling, counsel for defendant called his remaining witnesses and then put defendant on the stand himself to testify. Prior to defendant taking the stand, defense counsel did not renew his motion to continue. At the beginning of his testimony, defendant stated that he felt sleepy and was having trouble putting words together. Later in his testimony, defendant stated he was having trouble paying attention and attributed it to the drugs the doctor had given him. However, at no time during defendant's testimony did defense counsel renew the motion to continue.

At the close of the evidence, defendant moved for a mistrial based on the trial court's refusal to continue the trial the previous day due to defendant's illness. The trial court recited the events of the previous day and ruled as follows:

> The Court was addressed—or notified that the defendant felt bad yesterday morning, and had been throwing up but no request was made of the Court to stop the proceedings at that point. And the defendant did become physically ill and the Court allowed him to be excused and stopped the proceedings twice, I think, while he did that.

> At about 11 o'clock the Court was requested to stop the proceedings and allow the defendant to be examined, which the Court did. The defendant was examined. The examination revealed that the defendant was aware of his high blood pressure, symptoms which he had had for some time and neglected to treat, knew about before this proceeding. Defendant was—and testified that the proceedings had made him physically ill and Court will take judicial notice that that is a possibility for any defendant faced with what this defendant is facing and the possibilities of that. And Court has observed the defendant throughout the pro-

ceedings, his physical appearance has not changed since Monday. And he has shown—other than getting physically ill yesterday morning prior to being treated, he has shown the same physical traits and conduct that he's shown from the very beginning of the proceedings on Tuesday.

Court observed the defendant throughout his testimony and observed that he answered the questions, understood the questions, had detailed answers to the questions, supplied testimony that was responsive to the questions and gave examples, dates in response to the questions, and cannot find that the defendant was unable to proceed with his case or to assist in his defense and denies the motion to mis-try the action.

A motion for a continuance, and here the motion for a mistrial after no continuance was granted, "is ordinarily addressed to the sound discretion of the trial court and its ruling is not subject to review absent abuse of discretion." *State v. Thomas*, 294 N.C. 105, 111, 240 S.E.2d 426, 431 (1978). However, where the motion is based on a constitutional right, "the question presented is one of law and not discretion, and the ruling of the trial court is reviewable on appeal." *Id.* "Whether a defendant bases his appeal upon an abuse of judicial discretion or a denial of his constitutional rights, he must show both that there was error in the denial of the motion and that he was prejudiced thereby before he will be granted a new trial." *Id.* at 111, 240 S.E.2d at 431-32.

In *State v. Rhodes*, 202 N.C. 101, 161 S.E. 722 (1932), the defendant moved for a continuance on 5 March 1931 on the ground that he was not physically able to go to trial, and produced two certificates, each signed by a reputable physician, indicating the defendant's "highly nervous state" and the probability of a nervous collapse or breakdown. The motion was denied and the case was set for trial the following Monday, 9 March 1931. The case was not called at that time but the trial court requested that a physician examine the defendant. The physician found no organic disease, attributed the defendant's condition to large doses of hypnotic drugs, and expressed the opinion that under certain conditions the defendant would soon be able to undergo the trial. The case was finally called on 11 March 1931 and the defendant's motion to continue was again overruled. On appeal, the Supreme Court held that the trial court's denial of the defendant's motion for a continuance was not an abuse of discretion, because the trial court "made a careful and patient investigation of the circumstances pending the several motions of the de-

fendant and refused a continuance after sufficient opportunity for reflection." *Id.* at 103, 161 S.E. at 723.

In *State v. Ipock*, 242 N.C. 119, 86 S.E.2d 798 (1955), the defendant moved for a continuance on the ground that he was physically unable to attend court. In support of the motion, the defendant presented a doctor's note advising home care. The Supreme Court held that, since the doctor's note did not say that the defendant was unable to stand trial or that a trial would endanger his health, the trial court did not abuse its discretion in denying the defendant's motion to continue.

In *State v. Bacon*, 326 N.C. 404, 390 S.E.2d 327 (1990), the defendant became ill during jury selection. A doctor was summoned who examined the defendant and reported that the defendant's blood pressure was fine, his pulse "was a little high which is understandable," and "I think he's basically fit to undergo the trial." *Id.* at 415, 390 S.E.2d at 333. Jury selection resumed. Defendant objected and was allowed to state how he felt on the record. The defendant indicated that he had a headache and an upset stomach and was having difficulty paying attention to what the jurors were saying, but that his condition had not affected his abilitiy to understand the charges against him. The trial court noted that the defendant appeared well and refused to grant a continuance. The trial court requested that defense counsel let it know if the defendant was unable to communicate with him. Defense counsel never so informed the trial court. The Supreme Court stated that the defendant failed "to demonstrate even one occasion where he was unable to comprehend the proceedings or to communicate his opinions of the jurors to his counsel as a result of his alleged illness." *Id.* at 416, 390 S.E.2d at 334. Accordingly, the Supreme Court found no abuse of discretion by the trial court.

In the case *sub judice*, the trial court allowed defendant to be examined by a doctor who indicated that defendant "should not continue with his court today," due to his elevated blood pressure and his treatment for nausea and vomiting. The doctor's note did not state that defendant was physically unable to stand trial or that the trial would endanger defendant's health. *See Ipock*, 242 N.C. at 120, 86 S.E.2d at 800. The record shows that the trial court considered the doctor's opinion, but then reached its own conclusion based on its personal observation that defendant was able to assist in his defense. Defendant was then called to the stand and testified. The trial court observed defendant throughout his testimony and concluded that defendant understood the questions, gave detailed answers to the

questions, and was able to assist in his defense. Having reviewed defendant's testimony, we agree with the trial court that defendant was responsive to counsel's questions and provided clear testimony. Accordingly, we conclude that the trial court did not err in denying defendant's motion for a continuance and subsequent motion for a mistrial.

In conclusion, we hold that the trial court erred in admitting evidence of defendant's possession of pornographic materials but this error was not prejudicial under N.C. Gen. Stat. § 15A-1443. Defendant's remaining assignments of error are overruled.

No prejudicial error.

Judges MARTIN and TIMMONS-GOODSON concur.