STATE OF NORTH CAROLINA
v.
KENNETH DWIGHT POTEAT, II
No. COA07-511
Court of Appeals of North Carolina.
Filed December 18, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Kelly L. Sandling, for the State.
Belser & Parke, P.A., by David G. Belser, for Defendant.
ARROWOOD, Judge.
On 13 November 2000, Kenneth Dwight Poteat, II, (Defendant) was indicted for two counts of first degree rape pursuant to N.C. Gen. Stat. § 14-27.2(a)(1), one count of statutory sex offense pursuant to N.C. Gen. Stat. § 14-27.7(a), one count of first degree sex offense pursuant to N.C. Gen. Stat. § 14-27.4(a)(1), and one count of statutory rape pursuant to N.C. Gen. Stat. § 14-27.7(a). On 5 August 2002, Defendant was tried on all charges before a jury. Upon motion by Defendant, the court dismissed one count of first degree rape. On 9 August 2002, Defendant was convicted of first degree rape, statutory rape, first degree sex offense and statutory sex offense. The trial court entered judgment on the foregoing convictions and sentenced Defendant to 335 to 411 months in the North Carolina Department of Correction. From this judgment, Defendant appeals.
The evidence tends to show that on at least four occasions, beginning when she was eleven years old, B.B. was sexually abused by the twenty-two-year-old Defendant, her stepfather. The first sexual episode occurred in November 1995, when B.B. stayed home from elementary school one day, because she was sick. B.B. lay on her mother's bed near the bathroom and Defendant started massaging her. She testified "he held my arms back, my legs and . . . he started getting closer to my vagina[.]" B.B. continued, "I was about to fall asleep and I felt [his penis] between my legs and it woke me[.]" B.B. got out of bed and went into the bathroom because she did not feel well. Defendant followed her and gave her medicine which made B.B. feel dizzy. Defendant suggested that he should give B.B. a bath, which he advised would aid her sweating and sickness. After the bath, B.B. went back to bed and pretended that she was asleep. She stated that Defendant then "gave me oral sex and put my panties back on[.] . . . [Then,] I pretended like I woke up."
B.B. further testified that in late 1996, when she was twelve years old, Defendant "came home early from work and . . . went to my bedroom . . . and started . . . grabbing me[,] . . . touching me[,] and rubbing me and [sic] he stuck his finger in me[.]" She also stated that "eventually [Defendant] had sex with me." B.B.'s mother walked in while defendant was having sex with her. When B.B.'s mother entered the room, Defendant immediately pulled his pants back on and walked out. B.B.'s mother asked her about the incident and B.B. gave her mother her diary, in which she had written about numerous incidents of Defendant's sexual abuse. Her mother became tremendously upset, and held "a pistol at [Defendant's] head and . . . said, '[L]et's talk[.]'"
In early 1997, approximately two months later, B.B. testified that Defendant took her into her bedroom, "unclothed me . . . and [had] sex with me." She further stated "I felt funny this time because . . . I actually had my eyes open[] but I tried not to look."
Defendant and B.B.'s mother separated in September 1997, but Defendant still visited B.B.'s home "a few times after that." B.B. testified that in November 1997, Defendant came back "into [her] room and he started touching me again[.]" B.B. also testified that Defendant "started rubbing up my legs and . . . chest[,]" and Defendant "[put] his finger in me[,] . . . moved me down to the floor[,] and . . . put his mouth on me again." Then, Defendant "had sex with me."
At trial, another young lady testified that when she was five years old, Defendant gave her and her brother a bath, after which Defendant touched T.B.'s vagina. Defendant then unzipped his pants and showed T.B. his penis. Because of this incident, Defendant had previously been convicted of indecent liberties.

Admissibility of Evidence
In his first argument, Defendant contends that the court erred by admitting evidence of Defendant's prior conviction of indecent liberties. We disagree.
"The courts of this State have been markedly liberal in admitting evidence of prior sexual misconduct of a defendant for the purposes cited in Rule 404(b)." State v. Smith, 152 N.C. App. 514, 527, 568 S.E.2d 289, 297 (2002). The use of evidence permitted under N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005) is guided by two constraints: similarity and temporal proximity. State v. Brothers, 151 N.C. App. 71, 76, 564 S.E.2d 603, 606 (2002). "When the features of the earlier act are similar to the offenses with which the defendant is currently charged and the stretch of time between the instances is not too remote, such evidence has probative value." Smith, 152 N.C. App. at 527, 568 S.E.2d at 297 (citation omitted). The similarity between the offenses "need not rise to the level of the unique and bizarre, but must tend to support a reasonable inference that the same person committed both the earlier and the later acts." State v. Gary, 348 N.C. 510, 521, 501 S.E.2d 57, 65 (1998) (citation omitted).
We find this Court's opinion in Smith instructive here. In Smith, the "defendant was charged with sexual misconduct with a twelve year old which consisted of rubbing her breast and digitally penetrating her vagina." Smith, 152 N.C. App. at 527, 568 S.E.2d at 297. The trial court admitted the testimony of another woman, who testified that, "when she was fifteen years old, defendant had sexual intercourse and performed oral sex on her without her consent." Id. The trial court admitted the evidence under Rule 404(b), "for the purpose of showing an absence of mistake on the part of [the] defendant, [the] defendant's unnatural attraction to young girls, and a common plan or scheme to take advantage of young girls in situations where he had parental or adult responsibility over them." Id. at 519, 568 S.E.2d at 292. This Court concluded that the defendant's conduct with the two women was sufficiently similar and proximate in time to support its admission under Rule 404(b).
In the instant case, T.B. testified that in January 1994, when she was five years old, Defendant bathed her and her brother while T.B.'s mother slept downstairs. T.B. stated that after her bath, she put on a tee-shirt, but before she could put on underwear, Defendant pulled up her tee-shirt and touched her vagina, after which Defendant unzipped his pants and showed T.B. his penis. Here, the similarities between the two episodes are numerous: B.B. testified that (1) in November 1995, Defendant bathed her and performed oral sex on her while her mother was away at work; (2) in late 1996, Defendant digitally penetrated B.B.'s vagina and had sexual intercourse with her while her mother was asleep in the next room; (3) in early 1997, Defendant came into her bedroom and had sexual intercourse with her while her mother was away from the home; and (4) in September 1997, Defendant came into B.B.'s home and had sexual intercourse with her. Here, as in Smith, the evidence shows that Defendant exhibited a pattern of "attraction to young girls, and a common plan or scheme to take advantage of young girls in situations where he had parental or adult responsibility over them." Smith, 152 N.C. App. at 519, 568 S.E.2d at 292.
Furthermore, Defendant's prior indecent liberties conviction occurred in January 1994, less than two years prior to November 1995, the date of Defendant's first sexual advances toward B.B. This prior act is not too remote to consider it irrelevant and therefore inadmissible. See State v. Blackwell, 133 N.C. App. 31, 36, 514 S.E.2d 116, 119 (1999) (quoting State v. Stager, 329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991) (stating that "'remoteness in time generally affects only the weight to be given such evidence, not its admissibility[,]'" and further, that "prior cases have held that intervals of seven and ten years are not necessarily too remote to preclude the admission of prior-bad acts").
We conclude that Defendant's conduct with B.B. and T.B. was sufficiently similar and proximate in time to support the admission of T.B.'s testimony under Rule 404(b). This assignment of error is overruled.

Jury Instruction
In his second argument, Defendant contends that the court erred by instructing the jury to consider Defendant's prior sexual offense for the "one purpose" of determining Defendant's truthfulness and credibility, but also "solely . . . for the purpose of showing . . . plan, scheme, system or design," motive and opportunity. We conclude that Defendant has failed to show that the error, if any, in giving the jury instructions, was prejudicial. Our standard of review of Defendant's appeal requires us to hold a jury instruction "sufficient if it presents the law of the case in such [a] manner as to leave no reasonable cause to believe the jury was misled or misinformed." State v. Blizzard, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (internal quotation marks omitted). Moreover,
[t]he party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by [the] instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.
Id.
It is also axiomatic, that to obtain relief, a defendant must not only show error, but prejudice. Pursuant to N.C. Gen. Stat. § 15A-1443(a) (2005), "[a] defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached."
In the instant case, the court gave the jury the following limiting instruction before T.B. testified with regard to her sexual encounter with Defendant:
[T]he Court is going to allow evidence from this witness for a limited purpose and a limited purpose only. . . . Evidence of other crimes, wrongs or acts is not admissible under our law to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes, for this limited purpose suchas proof of motive, opportunity, preparation and plan. So those are the purposes  the limited purposes that this is being admitted into evidence.
The State and Defendant discussed with the court the proper way to charge the jury on T.B.'s testimony, and the attorneys recommended that the court add to the court's impeachment instruction an additional instruction regarding Rule 404(b) evidence.
In its charge to the jury, the trial court instructed the jury that evidence of crimes may be considered as bearing on Defendant's truthfulness:
If, considering the nature of the crimes, you believe that this bears on truthfulness, then you may consider it, together with all other facts and circumstances bearing on the defendant's truthfulness, in deciding whether you will believe or disbelieve his testimony at this trial. It is not evidence of the defendant's guilt in this case. You may not convict him on the present charge because of something he may have done in the past.
The court then gave a limiting instruction on the use of Rule 404(b) evidence, instructing the jury that T.B.'s testimony regarding Defendant's indecent liberties conviction:
was received solely for the propose of showing that the defendant had a motive for the commission of the crimes charged in this case. That there existed in the mind of the defendant a plan, scheme, system or design, involving the crimes charged in this case, and that the defendant had the opportunity to commit the crimes.
Assuming arguendo that the trial court erred in contradictorily instructing the jury regarding the proper purpose of T.B.'s testimony, Defendant has nonetheless failed to articulate how the jury instruction likely affected the outcome of the case. See N.C. Gen. Stat. § 15A-1443 (2005). The evidence against Defendant for the charged offenses was overwhelming. The State submitted evidence, denied by Defendant at trial, that Defendant confessed to having sex with B.B. in a statement to Detective Sharon Hovis of the Rowan County Sheriff's Department, in which Defendant said the following: "[B.B.] enjoyed the sex and the attention[;]" "I always performed oral sex on her before I had intercourse with her[;]" and "[every time] I would not have sex with [B.B.], she would kiss me on my neck or walk through the house naked or [sic] she would pull her shirt up and show her breast[s.]" Detective Hovis corroborated the evidence with her testimony. At trial, Defendant admitted to bathing B.B., an eleven year old child. B.B. also supplied vivid testimony at trial regarding her sexual encounters with Defendant.
We conclude that Defendant was not prejudiced by the court's jury instruction. This assignment of error is without merit.
For the reasons discussed above, we conclude that Defendant had a fair trial, free of prejudicial error.
No Error.
Judges CALABRIA and STEPHENS concur.
Report per Rule 30(e).