STATE OF NORTH CAROLINA v. STEPHEN M. DELSANTO

No. COA04-876

(Filed 2 August 2005)

## 1. Evidence— expert opinion—child sex abuse—credibility

The trial court committed plain error in a first-degree sexual offense case by admitting the testimony of a doctor that she had diagnosed the minor victim as having been sexually abused by defendant, and defendant is entitled to a new trial, because: (1) the only evidence that defendant sexually abused the victim is the victim's own statements to the testifying witnesses; (2) there was no physical evidence, yet the doctor testified that this lack of physical evidence was absolutely consistent with the victim's account; (3) the doctor conclusively stated that defendant sexually assaulted the minor child when the doctor testified that she diagnosed the minor child as having been sexually abused by defendant; (4) the doctor's inadmissible opinion likely had an impact on the jury's finding of guilt; (5) admission of expert testimony on a victim's credibility prejudices defendant in the eyes of the jury when the minor child's credibility is the central issue in the case; (6) there was no other permissible expert testimony, there was no evidence that the victim exhibited behaviors that were consistent with having suffered from sexual assault, and the State did not present other overwhelming evidence of defendant's guilt; and (7) the only physical manifestation of injury suffered by the minor child in this case was pain, which is subjective and not independently verifiable.

## 2. Evidence— prior crimes or bad acts—child sex abuse

The trial court erred in a first-degree sexual offense case by overruling defendant's objection and permitting a witness to testify that defendant had sexually abused her twenty-three years earlier, because: (1) evidence that a defendant engaged in previous sexual abuse is inadmissible when a significant lapse of time exists between the instances of alleged sexual abuse; (2) the lapse of time between the alleged instances of abuse merits against finding that defendant was engaged in an ongoing plan or scheme of sexual abuse; (3) unlike in *State v. Jacob*, 113 N.C. App. 605 (1994), the State offered no evidence that defendant did not have access to his preferred victim during the twenty-three year time span between the alleged instances of abuse, or that his

plan was interrupted and then resumed twenty-three years later; and (4) although the State for the first time on appeal relies on Rule 404(b) to show identity and intent, this argument is not properly before the Court of Appeals.

**3. Evidence— prior crimes or bad acts—possession of pornographic magazines and women's underwear—impermissible character evidence**

Although the trial court did not commit plain error in a first-degree sexual offense case by allowing the State to elicit a witness's testimony that defendant possessed pornographic magazines and women's underwear, the admission of the testimony should not be presented at defendant's new trial (granted on other grounds) for the purpose of showing defendant's propensity to commit the crime, because: (1) the State presented no evidence that defendant's possession of pornographic magazines and women's underwear played any part in the alleged offenses; and (2) the evidence was not relevant to prove the charges against him and was merely impermissible character evidence.

**4. Appeal and Error— preservation of issues—failure to argue**

Assignments of error that were not addressed in defendant's brief are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6).

Judge BRYANT concurring in part and dissenting in part.

Appeal by defendant from judgment entered 15 September 2003 by Judge Mark E. Klass in Superior Court, Davie County. Heard in the Court of Appeals 9 March 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Celia Grasty Lata, for the State.*

*Daniel Shatz for defendant-appellant.*

McGEE, Judge.

Stephen M. Delsanto (defendant) was indicted on one count of first degree sexual offense, in violation of N.C. Gen. Stat. § 14-27.4 (2003), and one count of taking indecent liberties with a child, in violation of N.C. Gen. Stat. § 14-202.1 (2003).

The State's evidence at trial tended to show that defendant stayed at the home of his daughter (Bonnie) from 30 September 2002 to 3

October 2002. Defendant's ex-wife (Brenda), son-in-law (Bobby), and twin grandchildren (H.B. and W.B.) were also living in the home. H.B. and W.B. were three years old at the time.

Bobby testified that on the evening of 3 October 2002, he was watching television with H.B. and W.B., when H.B. began rubbing her genital area. H.B. complained of pain and said "Pawpaw [defendant] touched me down there." H.B. also said "Pawpaw messed with [W.B.'s] penis." Bobby reported this information to Brenda, but did not tell Bonnie because Bonnie was sleeping at the time.

The following day, Brenda told Bonnie what Bobby had learned. Bonnie asked H.B. and W.B. whether they spoke with Bobby the night before. H.B. said yes, and that defendant had touched her "ginny," her shortened term for vagina. Bonnie retrieved a doll and asked H.B. to show Bonnie where defendant had touched H.B. H.B. spread the doll's legs and put her finger on the genital area. Bonnie called the Davie County Department of Social Services and Detective John Stephens (Detective Stephens) with the Davie County Sheriff's Department.

Detective Stephens interviewed H.B. He testified that H.B. told him that her "Pawpaw touched her gina and put his finger in there, and it hurt." H.B. also stated that defendant touched W.B.'s genitals. Detective Stephens was unable to successfully interview W.B. Detective Stephens made an appointment for H.B. to visit a pediatrician, Dr. Kathleen Russo (Dr. Russo), for an evaluation. Detective Stephens did not make an appointment for W.B. because, based on the allegations, there would have been no physical evidence of abuse.

Dr. Russo testified that she had received advanced recognition by the University of North Carolina Child Medical Evaluation Program, which signified that she had received advanced training in child sexual abuse. Dr. Russo testified that she examined H.B. on 18 October 2002. Dr. Russo asked H.B. if anyone had "touched [her] or hurt [her] some place that [she] did not like." H.B. responded that defendant touched her "inside" her genitals. H.B. also demonstrated this act on an anatomically correct doll.

Dr. Russo then completed a physical examination but did not note any trauma or indications of abuse in H.B.'s genital area. Dr. Russo testified that although she did not observe any physical manifestations of sexual abuse, the examination was "absolutely consist-

STATE v. DELSANTO

[172 N.C. App. 42 (2005)]

ent" with H.B.'s assertion that defendant touched her genital area. Dr. Russo explained that the anatomy of the female genital area is such that healing and return to the pre-trauma condition can occur very rapidly. Dr. Russo then testified that she diagnosed H.B. as having "suffered from the sexual abuse that she disclosed to [Dr. Russo] and [H.B.'s] family."

L.B., defendant's twenty-seven-year-old niece, also testified at trial that defendant was her babysitter when she was about four years old. L.B. testified that defendant would tell her to lie on the bed, then he would remove her pants and underwear, touch her genital area and perform oral sex on her. She also stated that on one occasion defendant made her touch and kiss his penis. L.B. testified that she only told her parents and stepmother about this abuse, but that she was aware that other family members had discussed the abuse with Bonnie.

Deborah Gordon (Gordon) testified on behalf of defendant. On cross-examination, Gordon testified that she helped retrieve some of defendant's belongings from Bonnie's home. Gordon testified that defendant had a backpack of "vulgar" magazines and some pairs of women's underwear.

The jury convicted defendant of first degree sexual offense with H.B., but acquitted defendant on the charge of indecent liberties with W.B. The trial court entered judgment on 15 September 2003 and sentenced defendant to a minimum term of 288 months and a maximum term of 355 months in prison. Defendant appeals.

I.

[1] Defendant assigns error to the trial court's admission of Dr. Russo's testimony that she diagnosed H.B. as having been sexually abused by defendant. Defendant argues that this testimony was an impermissible expert opinion on H.B.'s credibility.

" 'In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility.' " *State v. Bush,* 164 N.C. App. 254, 258, 595 S.E.2d 715, 718 (2004) (quoting *State v. Stancil,* 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (per curiam)); *see also State v. Ewell,* 168 N.C. App. 98, 105, 606 S.E.2d 914, 919, *disc. review denied,* 359 N.C. 412, 612 S.E.2d 327 (2005) (holding that it was error for the trial court to allow expert testimony that it was "probable that [the

child] was a victim of sexual abuse" when the testimony "was not based on physical evidence or behaviors consistent with sexual abuse"); *State v. Couser*, 163 N.C. App. 727, 729, 594 S.E.2d 420, 422-23 (2004) (finding error when the trial court permitted an expert to testify that she diagnosed the victim with "probable sexual abuse" when there was insufficient physical evidence of such abuse); *State v. Dixon*, 150 N.C. App. 46, 53, 563 S.E.2d 594, 598-99, *aff'd per curiam*, 356 N.C. 428, 571 S.E.2d 584 (2002) (concluding that it was improper to allow an expert opinion that the victim had in fact been sexually abused when no physical evidence supported a finding of sexual abuse).

In *Bush*, our Court held that it was plain error for the trial court to permit an expert witness to testify that she diagnosed the victim as having been sexually abused by the defendant. *Bush*, 164 N.C. App. at 260, 595 S.E.2d at 719. The expert witness, who was also Dr. Russo, testified that a lack of physical evidence was "absolutely consistent" with the victim being sexually abused, because physical evidence of abuse is not always present. *Id.* at 259, 595 S.E.2d at 718. Dr. Russo testified that she diagnosed the victim as having been sexually abused by the defendant, stating:

> "I was impressed by [the victim's] sensory recollection. Children cannot fantasize visual and other sensory experiences at the same time and the fact that she could tell me how she felt, how she was feeling that evening, what she felt, and what she did when she realized what was happening, what [the defendant's] response was when she realized he was waking up, where they were, where the other people in the family were at the time, all of that other sensory recollection was very telling and adds to the *credibility* of her story."

*Id.* at 259, 595 S.E.2d at 718. Our Court held that it was plain error to admit the expert witness' conclusive statement that the defendant had sexually abused the victim since the only evidence that the defendant sexually abused the victim was the victim's own testimony and the corroboration of other witnesses. *Id.* at 259, 595 S.E.2d at 718-19. As a result, "[t]he practical effect of Dr. Russo's testimony was to give [the victim's] story a stamp of credibility by an expert in pediatric gynecology[.]" *Id.* at 259, 595 S.E.2d at 719.

*Bush* is remarkably similar to the case before us. The only evidence that defendant sexually abused H.B. is H.B.'s own statements to the testifying witnesses. There was no physical evidence that H.B.

had been sexually abused; yet, just like in *Bush*, Dr. Russo testified that this lack of physical evidence was "absolutely consistent" with H.B.'s account. Furthermore, Dr. Russo conclusively stated that defendant sexually assaulted H.B. when she testified that she diagnosed H.B. as having been sexually abused by defendant:

> Q. I want to ask you now, after you conducted the physical examination and you conducted the interview with [H.B.], at some point in time did you form a medical diagnosis of [H.B.] at that time?
>
> A. Yes, I did, sir.
>
> Q. And what was your diagnosis?
>
> A. My diagnosis was that [H.B.] had suffered from the sexual abuse that she disclosed to me and her family. And my feelings were that [H.B.] being a three year old child could not fantasize that these events occurred. She could not make them up. Children that young do not have the ability to fantasize or—
>
> [ATTORNEY FOR DEFENDANT]: Objection.
>
> A. —make up—
>
> THE COURT: Overruled.
>
> A. —an act like that that they have not experienced. It's not within their mental ability to do that. So based on what she told me, the consistency of what she told me, what she told the parents, what she told law enforcement was just all very striking, and that I felt like she was—that she did experience that abuse.

Under *Bush*, Dr. Russo's expert opinion that defendant sexually abused H.B. amounted to an impermissible opinion of H.B.'s credibility. It was error for the trial court to admit the opinion.

The State argues that defendant has failed to preserve this assignment of error because defendant made only a general objection to Dr. Russo's testimony regarding the diagnosis. A general objection is normally not sufficient to preserve an issue for review on appeal. *See* N.C.R. App. P. 10(b)(1). Accordingly, we grant defendant's request to review for plain error. *See State v. Andrews*, 170 N.C. App. 68, 75, 612 S.E.2d 178, 183 (2005); *see also State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 807 (1983) (applying plain error review to the admissibility of evidence under N.C.R. App. P. 10(b)(1)).

Our Supreme Court has directed that plain error has occurred when an error " ' "had a probable impact on the jury's finding that the defendant was guilty." ' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982) (footnote omitted)). In this case, we find that Dr. Russo's inadmissible opinion likely had an impact on the jury's finding of guilt.

A trial court commits plain error when it admits expert testimony on a victim's credibility because it prejudices the defendant in the eyes of the jury. *Couser*, 163 N.C. App. at 731, 594 S.E.2d at 423; *see also Ewell*, 168 N.C. App. at 105-06, 606 S.E.2d at 920, *and Bush*, 164 N.C. App. at 259-60, 595 S.E.2d at 719. In *Couser*, the only evidence that the defendant sexually abused the minor victim was the victim's own testimony and the corroborating testimony of witnesses. *Couser*, 163 N.C. App. at 731, 594 S.E.2d at 423. We held that it was plain error for an expert to testify that she diagnosed the victim as having "probably [been] sexually abused." *Id.* at 730-31, 594 S.E.2d at 422-23. We found that the testimony likely impacted the jury's finding of guilt since it was an improper opinion of the victim's credibility, and "the central issue to be decided by the jury was the credibility of the victim." *Id.* at 731, 594 S.E.2d at 423.

Like in *Couser*, the only evidence of H.B.'s allegations were her own statements. H.B.'s credibility was the central issue in the case, and Dr. Russo's inadmissible expert opinion lent great weight to H.B.'s credibility. Had the jury not heard Dr. Russo's inadmissible expert opinion, there is a reasonable possibility that the jury would have reached a different result. In accordance with this Court's previous decisions on this issue, we find plain error. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36-37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."); *see also In re R.T.W.*, 359 N.C. 539, 542 n3, 614 S.E.2d 489, 491 n3 (2005).

The State argues that *State v. Stancil*, 146 N.C. App. 234, 552 S.E.2d 212 (2001), *modified and aff'd per curiam*, 355 N.C. 266, 559 S.E.2d 788 (2002)), and not *Couser*, controls this case. Although our Supreme Court found that the admission of the expert testimony in *Stancil* was error, it held that the error was not plain error because there was overwhelming evidence of the defendant's guilt. *Stancil*, 355 N.C. at 267, 559 S.E.2d at 789. Our Court rejected a similar argu-

STATE v. DELSANTO

[172 N.C. App. 42 (2005)]

ment in *Couser*, where we noted that, in *Stancil*, "in addition to testimony of the victim and other corroborating evidence[,] there were two permissible expert opinions that the victim exhibited characteristics consistent with sexual abuse." *Couser*, 163 N.C. App. at 730-31, 594 S.E.2d at 423 (citing *Stancil*, 146 N.C. App. at 240, 552 S.E.2d at 215-16). The victim in *Stancil* also "showed intense and immediate emotional trauma after the incident," and continued to show such symptoms five days later. *Couser*, 163 N.C. App. at 731, 594 S.E.2d at 423 (citing *Stancil*, 146 N.C. App. at 240, 552 S.E.2d at 215-16). We then contrasted this "overwhelming" evidence with the evidence in *Couser*: the mere testimony of the victim and the other witnesses's corroboration. *Couser*, 163 N.C. App. at 731, 594 S.E.2d at 423. Unlike in *Stancil*, there was no other permissible expert testimony in *Couser*, nor was there evidence that the victim exhibited behaviors that were consistent with having suffered from sexual assault. *Id.* at 731, 594 S.E.2d at 423.

We find that *Couser*, and not *Stancil*, controls this case. The State did not present other overwhelming evidence of defendant's guilt. Dr. Russo's inadmissible expert opinion was the only expert witness testimony for the State. Although H.B.'s family member testified that H.B.'s behavior had changed since the incident, there was no evidence that this behavior was symptomatic of having suffered sexual abuse. In the absence of overwhelming evidence of defendant's guilt, we find that the admission of Dr. Russo's diagnosis was plain error.

We also distinguish this case from this Court's recent decision in *State v. Goforth*, 170 N.C. App. 584, 614 S.E.2d 313 (2005). In *Goforth*, this Court held that it was not error to admit expert opinion testimony that the victims had been repeatedly sexually abused. *Id.* at 590-91, 614 S.E.2d at 317-18. The expert testified that both victims had physical manifestations of vaginal trauma caused by "intentional" or "not accidental" penetration. *Id.* at 590-91, 614 S.E.2d at 317. Therefore, in *Goforth*, the expert's testimony involved objective physical evidence of sexual abuse. In contrast, the only physical manifestation of injury suffered by H.B. in this case was pain, which is subjective and not independently verifiable. Therefore, it was improper for Dr. Russo to testify that she diagnosed H.B. as having been sexually abused.

Finding plain error, we grant defendant a new trial. However, we elect to address defendant's remaining assignments of error since the issues are likely to recur upon retrial.

STATE v. DELSANTO

[172 N.C. App. 42 (2005)]

## II.

[2] Defendant argues that the trial court committed error when it overruled defendant's objection and permitted L.B. to testify that defendant had sexually abused her twenty-three years earlier. At trial, after the parties conducted a voir dire hearing on L.B.'s testimony, defendant objected to the testimony on the grounds that it was improper evidence under Rule 404(b). N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). The trial court admitted the testimony, and instructed the jury that "[t]his evidence will be received solely for the purpose of showing that there existed in the mind of the [d]efendant a scheme, plan, system, or design involving the crime charged in this case."

Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

*Id.* Our Supreme Court has held that, under Rule 404(b), "evidence of prior sex acts may have some relevance to the question of [the] defendant's guilt of the crime charged if it tends to show a relevant state of mind such as intent, motive, plan, or opportunity." *State v. Boyd,* 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988). However, the admissibility of evidence under Rule 404(b) "is constrained by the requirements of similarity and temporal proximity." *State v. Al-Bayyinah,* 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002). Furthermore, "[r]emoteness in time between an uncharged crime and a charged crime is more significant when the evidence of the prior crime is introduced to show that both crimes arose out of a common scheme or plan." *State v. Stager,* 329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991). Evidence that a defendant engaged in previous sexual abuse is inadmissible when a significant lapse of time exists between the instances of alleged sexual abuse. *State v. Jones,* 322 N.C. 585, 590, 369 S.E.2d 822, 825 (1988).

In *Jones,* the twelve-year-old victim alleged that the defendant, her stepfather, sexually assaulted her. *Id.* at 586, 369 S.E.2d at 822. A witness testified that the defendant, with whom the witness formerly lived, had sexually assaulted the witness in the same manner. *Id.* at

586, 369 S.E.2d at 822-23. The witness testified that this abuse occurred seven years earlier, beginning when the witness was eleven years old. *Id.* at 586, 369 S.E.2d at 822-23. Our Supreme Court held that the admission of this testimony was in error since the time period between the two acts was "severely attenuated [and] 'substantially negate[s] the plausibility of the existence of an ongoing and continuous plan to engage persistently in such deviant activities.'" *Id.* at 590, 369 S.E.2d at 824 (second alteration in original) (quoting *State v. Shane*, 304 N.C. 643, 656, 285 S.E.2d 813, 821 (1982)). The Court found that the "probative impact [of the evidence] ha[d] been so attenuated by time that it ha[d] become little more than character evidence illustrating the predisposition of the accused." *Id.* at 590, 369 S.E.2d at 825.

Like in *Jones*, the extreme time lapse between the alleged instances of abuse merits against finding that defendant was engaged in an ongoing plan or scheme of sexual abuse. Because the evidence was admitted solely for the purpose of showing a "scheme, plan, system or design," and because of the lapse of twenty-three years, a significant period of time, the trial court erred in admitting this evidence.

The State argues that *State v. Jacob*, 113 N.C. App. 605, 439 S.E.2d 812 (1994), controls this case. In *Jacob*, the victim testified that the defendant, her father, raped her three times when she was ten years old. *Id.* at 606, 439 S.E.2d at 813. Over the defendant's objection, the defendant's twenty-two-year-old daughter testified that the defendant sexually abused her when she was around nine years old. *Id.* at 607, 439 S.E.2d at 813. A witness testified that the defendant had told her "when my daughters get old enough to know about love, [I am] going to be the one to teach them." *Id.* at 609, 439 S.E.2d at 814. We held that the incidents of sexual assault were not too remote in time to show that the defendant had a common scheme or plan to initiate his prepubescent daughters into sex since "the remoteness in time was due to [the] defendant's having almost no access to the daughters of his first marriage following his divorce. . . . [The victim] was not born until [4 years after the defendant's divorce], and did not reach a prepubescent age until several years later." *Id.* at 611, 439 S.E.2d at 815.

We find *Jacob* distinguishable from this case. Unlike in *Jacob*, the State has offered no evidence that defendant did not have any access to his preferred victim during the twenty-three year time span between the alleged instances of abuse. The State has failed to estab-

STATE v. DELSANTO

[172 N.C. App. 42 (2005)]

lish that defendant's plan was interrupted and then resumed twenty-three years later. The admission of this evidence was in error and should not be admitted at his new trial.

In the alternative, the State argues that L.B.'s testimony was admissible under Rule 404(b) to show identity and intent. The trial transcript reveals that the State did not rely on these grounds when it argued for the admissibility of the evidence before the trial court. Rather, the State relied on the theory that the testimony was admissible to show a common scheme or plan. Since the argument of identity and intent has been raised for the first time on appeal, it is not properly before us. *State v. Penland,* 343 N.C. 634, 654, 472 S.E.2d 734, 745 (1996), *cert. denied,* 519 U.S. 1098, 136 L. Ed. 2d 725 (1997); *see also State v. Hunter,* 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) ("The theory upon which a case is tried in the lower court must control in construing the record and determining the validity of the exceptions.").

### III.

**[3]** The final assignment of error addressed in defendant's brief contends that the trial court erred when it allowed the State to elicit Gordon's testimony that defendant possessed pornographic magazines and women's underwear. Defendant failed to object to this evidence at trial, and asks that we review for plain error. In order to determine whether plain error occurred at the trial court, we " 'must examine the entire record and determine if the . . . error had a probable impact on the jury's finding of guilt.' " *State v. Pullen,* 163 N.C. App. 696, 701, 594 S.E.2d 248, 252 (2004) (quoting *State v. Odom,* 307 N.C. 655, 661, 300 S.E.2d 375, 379 (1983)).

Under Rule 404(b), "evidence of a defendant's prior conduct, such as the possession of pornographic videos and magazines, is not admissible to prove the character of the defendant in order to show that the defendant acted in conformity therewith on a particular occasion." *State v. Smith,* 152 N.C. App. 514, 521, 568 S.E.2d 289, 294, *disc. review denied,* 356 N.C. 623, 575 S.E.2d 757 (2002). Such evidence is only permissible if it is relevant to show something other than a defendant's character or propensity to commit the crime of which he is charged. N.C. Gen. Stat. § 8C-1, Rule 404(b); *Smith,* 152 N.C. App. at 521, 568 S.E.2d at 294.

In *Smith,* the defendant was accused of sexually assaulting his stepdaughter. *Id.* at 516, 568 S.E.2d at 291. Our Court held that the

trial court erred by admitting evidence that the defendant possessed pornographic magazines. *Id.* at 521, 568 S.E.2d at 295. There was no evidence that the defendant had shown the victim pornography or otherwise used the pornography during the alleged assaults, and consequently the defendant's possession of the pornography was not relevant to prove that the defendant committed the charged offenses. *Id.* at 523, 568 S.E.2d at 295. Therefore, we held that the sole purpose of the evidence "was to impermissibly inject [the] defendant's character into the case to raise the question of whether [the] defendant acted in conformity with his character at the times in question." *Id.* at 522, 568 S.E.2d at 295; *accord Bush,* 164 N.C. App. at 262, 595 S.E.2d at 720 (admission of evidence that a defendant accused of sexual assault on a minor possessed and purchased pornographic videos was inadmissible under Rule 404(b) and prejudicial at trial).

As in *Smith,* the State presented no evidence that defendant's possession of pornographic magazines and women's underwear played any part in the alleged offenses. Therefore, the evidence was not relevant to prove the charges against him and was merely impermissible character evidence. The admission of the evidence was in error. However, we do not find that the error amounts to plain error. There is no indication that the error had any impact on the jury's finding of guilt. Nevertheless, the admission of the testimony for the purpose of showing defendant's propensity to commit the crime was in error and should not be presented at defendant's new trial for this same purpose.

[4] We deem those assignments of error not addressed in defendant's brief abandoned. N.C.R. App. 28(b)(6).

New trial.

Judge STEELMAN concurs.

Judge BRYANT concurs in part and dissents in part with a separate opinion.

BRYANT, Judge concurring in part and dissenting in part.

I dissent from the majority opinion granting defendant a new trial upon finding plain error in the admission of Dr. Russo's testimony. I disagree that the trial court committed any error by admitting the testimony of Dr. Russo, and I strongly disagree that there was plain error

committed. The majority states the expert medical opinion of Dr. Russo was impermissible testimony on the victim's credibility. However, the record shows Dr. Russo's expert medical opinion was based on her training and experience. Dr. Russo was tendered and admitted as an expert in "pediatric gynecology" and in "child [sexual] abuse". The record also shows that in addition to extensive medical training in pediatrics and child abuse, Dr. Russo had interviewed and examined child victims of physical and sexual abuse, on average, once a week for seven years prior to her testimony.

Rule 702 provides in part:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C. Gen. Stat. § 8C-1, Rule 702 (2003).

"In determining whether expert medical opinion is to be admitted into evidence the inquiry should be . . . whether the opinion expressed is really one based on the special expertise of the expert, that is, whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." *State v. Trent*, 320 N.C. 610, 614, 359 S.E.2d 463, 465 (1987). Here, based on training and experience, Dr. Russo was certainly in a better position to have an opinion on whether the child in the instant case had been sexually abused. Dr. Russo evaluates each child's intellectual ability as a part of her examination. As a medical professional she must determine whether a child can accurately relay medical information in order for her to use that information in medically diagnosing or treating a child patient.

When asked at trial if her physical examination of the child was consistent with the history given, Dr. Russo replied:

It was absolutely consistent. With what [the child] stated happened, I would expect a normal examination. The tissues down there are very elastic. In other words, they can stretch and then return to their normal shape. Also, healing is very rapid in that area . . . and [] takes place very quickly. So with the type of abuse that she disclosed, I would not expect to see signs of trauma or damage. . . .

Dr. Russo was then asked her diagnosis:

> My diagnosis was that [the child] had suffered from the sexual abuse that she disclosed to me and her family. And my feelings were that [the child] being a three[-]year[-]old child could not fantasize that these events occurred. She could not make them up. Children that young do not have the ability to fantasize or [OBJECTION OVERRULED] an act like that they have not experienced. It's not within their mental ability to do that. So based on what she told me, the consistency of what she told me, what she told the parents, what she told law enforcement was just all very striking, and that I felt like she was—that she did experience that abuse.

"[I]t is []well-settled that testimony based on the witness's examination of the child witness and expert knowledge concerning the abuse of children in general is not objectionable because it supports the credibility of the witness or states an opinion that abuse has occurred." *State v. Dick*, 126 N.C. App. 312, 315, 485 S.E.2d 88, 89 (1997) (internal citations omitted). Here, the child described to Dr. Russo pain inside her vaginal area and described where they were sitting when the incident occurred. She also demonstrated for Dr. Russo using anatomical dolls, where she was touched. Therefore, when Dr. Russo conducted her examination of the vaginal area of the child, the results were consistent with what she had been told. In other words, one would not necessarily expect to see scarring or trauma or other physical evidence of abuse based on the history given.

The majority discusses many cases including *State v. Bush*, 164 N.C. App. 254, 595 S.E.2d 715 (2004), *State v. Couser*, 163 N.C. App. 727, 594 S.E.2d 420 (2004) and *State v. Dixon*, 150 N.C. App. 46, 563 S.E.2d 594 (2002) for the proposition that it is error to admit expert opinion testimony in child sexual assault cases where no physical evidence of abuse exists. To the extent that these cases stand for that proposition, such a conclusion is reasonably applicable only in sexual assault cases where one would <u>expect</u> to find physical evidence of abuse. Such cases might include forcible sexual assault or repeated sexual abuse. *See, e.g., State v. Goforth*, —— N.C. App. ——, ——, —— S.E.2d ——, —— (June 7, 2005) (No. COA04-608) (where child medical expert testified "if there are physical findings [in a child's examination], this is usually indicative of repeated abuse"). The instant case is factually similar to many, many child sexual assault cases where the nature of the assault, a sexual touching, is such that one would not expect physical evidence of abuse. *See, Id.* Therefore,

in those cases where the <u>clinical</u> evidence of sexual abuse is based on expert medical testimony that the acts of sexual abuse alleged are *unlikely* to leave physical evidence, that testimony is valid and states the basis for the expert's opinion. For these reasons, I would hold Dr. Russo's testimony to be permissible medical opinion from an expert in child abuse, and would find no error in its admission.

Nevertheless, even assuming *arguendo* the admission of this expert medical opinion testimony was erroneous, it did not arise to the level of plain error. As our Supreme court has stated time and again, plain error is "error 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Parker*, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999) (citations omitted), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 2d 681 (2000). "Plain error does not simply mean obvious or apparent error." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). The plain error rule must be applied cautiously and only in exceptional cases where, " 'after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." ' " *State v. Davis*, 349 N.C. 1, 29, 506 S.E.2d 455, 470 (1998), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999) (citations omitted).

The majority states that "Dr. Russo's inadmissible opinion likely had an impact on the jury's finding . . ." and that "[i]n the absence of overwhelming evidence of defendant's guilt, . . . the admission of Dr. Russo's diagnosis was plain error." I disagree as there is significant additional evidence in the record regarding the sexual abuse of this three year old child such that absent the testimony of Dr. Russo, the jury would nevertheless have reached a verdict of guilty. The jury heard the testimony of the child's father who testified in pertinent part:

Q. During that time period while you were in the living room that evening with your children, did you observe anything unusual take place?

A. Well, my little girl, she was messing. . . . She was messing with herself, like rubbing—

Q. Okay. And when you indicate that she was messing with herself and rubbing, what part of her body was she doing that to?

. . .

A. Her private part.

Q. Okay. At that point in time when you observed that, did you say anything to [the child]?

A. I said "[H], what are you doing?" . . . She said, "It hurts[.]"

Q. Okay. Did she make any other comments at that time?

A. She said that—that Pawpaw—she calls him Pawpaw. . . . "Pawpaw touched me down there". . . She said he touched her down there with his finger.

Detective John Stephens of the Davie County Sheriff's Department reported to the home on the date of the incident and spoke to the three-year-old child. Detective Stephens told the jury that: "She was a real sweet young lady. She told me that her Pawpaw touched her 'gina' and put his finger in there and it hurt." He further testified the child got a doll to indicate what her grandfather did to her. "[S]he put the doll on the table . . . [s]he opened the doll's legs and put her finger inside between the doll's legs at the vaginal area."

The mother of the child testified before the jury and stated the child said Pawpaw touched her and that it hurt, and that the child, using a doll, demonstrated where her grandpa touched her. The mother also testified the child's attitude and behavior had changed since the incident in that the child had more "attitude" and she did not want any men in the bathroom with her, even her twin brother. In addition, the mother testified about two conversations with her father; one in which he denied touching the child; and another in which he said "I'm sorry for what I've done. I know what I've done wrong and I'm where I need to be[.]" Given this strong testimonial evidence against defendant, it is not probable the jury would have reached a different verdict absent Dr. Russo's testimony.

In part II the majority holds that admission of evidence that defendant sexually abused his niece twenty-three years ago was in error and "should not be admitted during [defendant's] new trial[.]" As stated *infra*, I would hold defendant is not entitled to a new trial based on the admission of Dr. Russo's testimony. Because of the strong evidence otherwise of defendant's guilt, I would hold the other crimes evidence involving defendant's niece to be harmless error.

As to part III of the majority opinion, I agree with the majority's conclusion that the admission of evidence of defendant's possession

of pornographic magazines and women's underwear did not arise to
the level of plain error.