CALABRIA, Judge.
Robert Lee Denny, Jr. ("defendant") appeals from a judgment entered upon jury verdicts finding him guilty of one count of first degree sexual offense with a child ("first degree sex offense"). Defendant also petitions by writ of certiorarito appeal the trial court's order requiring lifetime sex offender registration and enrollment in satellite-based monitoring upon his release from imprisonment. We find no error at trial, but vacate the trial court's order requiring lifetime sex offender registration and enrollment in satellite-based monitoring. We remand for the entry of an order requiring defendant to maintain sex offender registration and enroll in satellite-based monitoring according to statutory requirements.
I. Background
Between the ages of six and ten, M.C. ("Megan")[1] frequently visited the home of her younger cousin, "Amy." Defendant is Amy's grandfather, and lived in the residence with Amy's family. During those visits, defendant touched Megan inappropriately. Defendant rubbed Megan's legs and genital area, and penetrated her with his fingers. On two specific occasions, defendant rubbed Megan's legs, looked under her shirt, reached up her shorts or pants, and inserted his fingers into her vagina. At the time of these specific incidents, Megan was ten years old.
Megan was thirteen when her parents first spoke to her about sexual intercourse. It was then that she told her parents about defendant's behavior toward her, and her parents reported defendant to law enforcement. Defendant was arrested and charged with first degree sex offense.
At trial, the State presented evidence from three other girls, "Brie," "Tacy," and "Callie"[2] (collectively, "the girls"), who also claimed that defendant had inappropriately touched them.
Brie is defendant's daughter. Brie testified that she lived with defendant in approximately 1982-1983 when she was between nine and eleven years old. She testified that one night she slept with defendant and her stepmother after she had a bad dream. While Brie's stepmother slept, defendant pulled down her underwear, placed his penis between her legs and ejaculated between her legs. The abuse continued after that night, with defendant digitally penetrating her and stating that he was "checking [her] temperature ." More abuse occurred at night, when Brie slept in the room she shared with her brother. The abuse stopped when she returned to live with her mother. On one occasion, Brie's friend Tacy spent the night with her at defendant's house.
Tacy testified that she woke up during the night and saw defendant in the room. Defendant "proceeded to put his hand up through the covers and touch my legs. I held my legs very, very tight closed, because I was scared he was going to touch me where I didn't want him to touch me. And he just kept trying and kept trying." Eventually, defendant stopped and left the room. The next morning, Tacy told Brie what had happened. She did not tell anyone else until she was married, when she told her husband.
Callie was a friend of defendant's youngest daughter, "Alice." Callie testified that in 1999, just after she had turned fifteen, she slept in Alice's bedroom at defendant's house. During the night, she awoke to find defendant with his hands down her shirt and pants. According to Callie, she rolled over and looked at defendant, who "threw his hands up" and walked into the bathroom. Callie then immediately left defendant's house. She told her mother about the incident, and reported defendant to law enforcement. However, nothing further happened with regard to the incident.
After hearing defendant's motion in limineto exclude the evidence, the trial court concluded that the evidence was admissible for the purpose of showing a "common plan or scheme to fondle and digitally penetrate vulnerable pre-teen or teenaged children who were in his home where he had access to them because of his relationship with them or their relationship with his children or grandchildren." The trial court also delivered a limiting instruction to the jury when Callie testified, and reminded the jury of the instruction at the close of all the evidence.
On 6 November 2013, the jury returned a verdict finding defendant guilty of first degree sex offense. The trial court sentenced defendant to a minimum of 230 months and a maximum of 285 months in the custody of the North Carolina Division of Adult Correction, and required defendant to register as a sex offender and enroll in lifetime satellite-based monitoring upon his release. Defendant appeals.
On appeal, defendant argues that the trial court (1) erred by admitting the testimony of Brie, Tacy, and Callie to show a common scheme or plan, and (2) erred in finding that first degree sex offense is an aggravated offense requiring lifetime sex offender registration and enrollment in satellite-based monitoring.
II. Common Scheme or Plan
Defendant argues that the testimony of Brie, Tacy, and Callie was improperly admitted because the evidence was not sufficiently similar or sufficiently proximate in time to show that they were part of a common plan involving the offense in the instant case. Defendant also argues that the prejudicial effect of that evidence outweighed its probative value under N.C. Gen.Stat. § 8C-1, Rule 403 (2013). We disagree.
When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling ... we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.
State v. Beckelheimer,366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). "An abuse of discretion occurs when a trial judge's ruling is manifestly unsupported by reason." State v. Summers,177 N.C.App. 691, 697, 629 S.E.2d 902, 907 (2006) (citation omitted).
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
N.C. Gen.Stat. § 8C-1, Rule 404(b) (2013). "[S]uch evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime. In addition, this Court has been markedly liberal in admitting evidence of similar sex offenses by a defendant." Beckelheimer,366 N.C. at 130, 726 S.E.2d at 159 (citations omitted). "Rule 404(b) is still constrained by the requirements of similarity and temporal proximity. Prior acts are sufficiently similar if there are some unusual facts present in both crimes that would indicate that the same person committed them." Id.at 131, 726 S.E.2d at 159 (citations omitted). However, our courts "do not require that the similarities rise to the level of the unique and bizarre." Id.(citation omitted). "Remoteness in time between the other crimes and the current charges generally goes to the weight of the evidence not its admissibility." Summers,177 N.C.App. at 697, 629 S.E.2d at 907 (citation omitted).
As an initial matter, defendant contends that the trial court abused its discretion in finding that the probative value of the girls' testimony substantially outweighed the danger of unfair prejudice. Defendant objected to the girls' testimony in the form of a motion in limine,and the trial court heard the arguments of counsel regarding the evidence outside the presence of the jury. Based upon the State's proffer of evidence, the trial court made the following findings of fact:
2. The State has alleged that the Defendant rubbed [Megan] between her legs, put his hand down her pants/underwear and digitally penetrated her vagina.
3. The State also contends that when [Brie], the Defendant's ... daughter, was about the same age as [Megan] was (10-11 years old), she went to live with the Defendant while her mother (Defendant's ex-wife) was emotionally fragile following the death of her husband, and that the Defendant committed many similar acts of fondling and digital penetration against [Brie].
4. The State further contends that when [Brie's] friend [Tacy] (approximately 10 or 11 years old), spent a night with [Brie] at Defendant's home, the Defendant snuck in the bedroom where the two girls were sleeping, fondled the legs of [Tacy] and tried to advance up her leg toward her vagina, and that [Tacy] never told anyone except [Brie] and her [Tacy's] husband about it.
5. The State further contends that in 1999, [Callie], who was a young teenager and a friend of Defendant's daughter [Alice], was spending the night with [Alice] at the residence where [Alice] lived with her mother and the Defendant, and that [Callie] woke up to find the Defendant fondling her legs and trying to move up toward her vagina. The State contends that [Callie] reported this to her mother and to law enforcement at the time.
The trial court then concluded that "[t]he acts, as proffered by the State, are similar in that it can be inferred that the Defendant had a common plan or scheme to fondle and digitally penetrate vulnerable pre-teen or teenaged children who were in his home where he had access to them[.]" The trial court granted defendant's motion to sequester the 404(b) witnesses at the same time it denied his motion in limine.The trial court also gave the following instruction before Callie's testimony regarding defendant's conduct toward her:
Members of the jury, I want to give you some instructions about this testimony. I may remind you of the same instruction when some other witnesses testify.
...
Evidence may be received tending to show that on an earlier occasion, even years earlier, that the defendant touched this witness or another witness improperly. This evidence, if it is received, if that is the evidence that comes out on the witness stand, is received solely for the purpose of showing, if it does, that there existed in the mind of the defendant a plan, scheme, or design that would be similar to or involving the same crime that is charged in this case.
If you believe that evidence-if that is the evidence that comes out, and you believe it, you may consider it, but only for that limited purpose. Do you understand that?
Mr. Denny is not being charged with any offense except the one that is alleged against [Megan]. Do you understand that?
Also, I want to instruct you-and at the end of the case I'll give you this same instruction again, but I want to remind you of this.
You are the sole judges of the believability of any witness. You must decide for yourselves whether to believe the testimony of any witness. You may believe all, any part, or none of a witness' testimony. In deciding whether to believe a witness, you should use the same tests of truthfulness that you use in your everyday lives. Among other things, these tests may include the opportunity of the witness to see, hear, know, or remember the facts or occurrences about which the witness testifies; the manner and appearance of the witness; any interest, bias, prejudice, or partiality the witness may have; the apparent understanding and fairness of the witness; whether the testimony is reasonable; and whether the testimony is consistent with other believable evidence in the case.
Additionally, in its charge to the jury at the close of all the evidence, the trial court instructed the jury that:
Evidence has been received tending to show that on earlier occasions it is alleged that the defendant engaged in sexual acts with three other minors. This evidence was received solely for the purpose of showing that there existed in the mind of the defendant a plan, scheme, system, or design involving the crime charged in this case.
If you believe this evidence, you may consider it, but only for the limited purpose for which it was received. You may not consider it for any other purpose.
After deliberation, the jury found defendant guilty of first degree sex offense.
Defendant cites State v. Gray,210 N.C.App. 493, 709 S.E.2d 477 (2011), State v. Jones,322 N.C. 585, 369 S.E.2d 822 (1988), and State v. Delsanto,172 N.C.App. 42, 615 S.E.2d 870 (2005) to support his argument that the acts in the girls' testimony were not sufficiently similar and too remote in time to constitute a common plan.
In all three of these cases, the defendants were charged with various sexual offenses. In all three, the State presented evidence that the defendants had previously sexually assaulted children around the same ages as the victims. In Gray,the defendant's previous offense was eighteen years before the charged offense. 210 N.C.App. at 496, 709 S.E.2d at 481. In Jones,the defendant's previous offense was seven years earlier. 322 N.C. at 586, 369 S.E.2d at 822. In Delsanto,the defendant's previous offense was 23 years prior to the charged offense. 172 N.C.App. at 45, 615 S.E.2d at 872. In all three cases, the Court held that the prior offenses were too remote in time.
Unlike the victims in Gray, Jones,and Delsanto,the victims in State v. Shamsid-Deen,324 N.C. 437, 379 S.E.2d 842 (1989) and State v. Frazier,344 N.C. 611, 476 S.E.2d 297 (1996) were not the only family members assaulted by the defendants. In Shamsid-Deen,the defendant was charged with the rape of his twenty-year-old daughter. 324 N.C. at 438, 379 S.E.2d at 843. The State presented evidence of several prior sexual assaults by the defendant against the victim and her two sisters over the course of approximately twenty years. 324 N.C. at 440-41, 379 S.E.2d at 844-45. The Court held that the evidence was properly admitted. Id.at 445, 379 S.E.2d at 847. In Frazier,the State presented evidence that the defendant had sexually abused three other female family members over a period of approximately twenty-six years before the trial for the charged offenses. 344 N.C. at 613, 476 S.E.2d at 298. The Court held that the prior acts were not too remote to be considered as evidence of defendant's common plan or scheme to sexually abuse female family members. Id.at 616, 476 S.E.2d at 300. "When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan." Id.(quoting Shamsid-Deen,324 N.C. at 445, 379 S.E.2d at 847 ).
In the instant case, the girls testified that the alleged acts occurred approximately in 1982, 1983, and 1999. The charged offense against Megan occurred in 2009. Although there are extended periods of time between the alleged acts, there is evidence of multiple acts occurring during the time frame, and defendant resumed his conduct when he had access to a vulnerable victim. The trial court made findings regarding each alleged incident including the ages of the girls, the acts alleged (fondling and digital penetration), and the surrounding circumstances (the girls were either related to defendant or friends with defendant's daughters or grandchildren, and spending the night at defendant's residence). The court cited Beckelheimerfor its conclusion that "[w]hen there are sufficient similarities in incidents, their remoteness in time is not so significant as to render the prior acts irrelevant as evidence of modus operandi[,]" then concluded that "[t]he acts, as proffered by the State, are similar in that it can be inferred that the Defendant had a common plan or scheme to fondle and digitally penetrate vulnerable pre-teen or teenaged children who were in his home where he had access to them because of his relationship with them or their relationship with his children or grandchildren."
Defendant contends that the facts in the instant case, as well as the prior acts, are not unusual enough to support a finding of a common scheme or plan because the circumstances in his case are common to all sexual assaults. Defendant specifically contends that the evidence would be admissible if the unusual excuse of checking the girls' temperatures through digital penetration occurred in every instance. However, defendant is mistaken. Although there are differences in the alleged acts, there are also strong similarities. The girls were young females between the ages of ten and fifteen, the offenses occurred at the defendant's residence, the acts involved rubbing, fondling, and digital penetration of the victims, the acts occurred in the evening and at night, another person would frequently be physically present in the home or the room when the acts occurred, and defendant would behave afterwards as if his actions were normal.
"When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan." Frazier,344 N.C. at 616, 476 S.E.2d at 300 (citation omitted). Because there were several acts alleged between 1982 and 2009, and because there were substantial similarities between the acts, the evidence was sufficient to support the trial court's findings, and the findings support the court's conclusion that the evidence shows a common plan or scheme to molest vulnerable young female visitors to his residence.
Since the evidence supports the trial court's findings and the findings support its conclusion, we must now determine whether the trial court's Rule 403 determination amounts to an abuse of discretion. In the instant case, the State provided a proffer of evidence summarizing the girls' proposed testimony outside the presence of the jury. The trial court then heard arguments from the attorneys and ruled on the admissibility of the evidence. The trial court admitted the girls' testimony, but excluded evidence regarding defendant's involvement in an unrelated investigation in the 1970s, indicating its careful consideration of the evidence. Moreover, the trial court gave appropriate limiting instructions both before Callie's testimony and at the close of all evidence. We conclude that it was not an abuse of discretion for the trial court to implicitly determine that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. Therefore, the trial court properly admitted the evidence.
III. Sex Offender Registration and Satellite-Based Monitoring
Defendant argues that the trial court erred in finding that first degree sex offense pursuant to N.C. Gen.Stat. § 14-27.4(a)(1) is an aggravated offense requiring lifetime registration as a sex offender and enrollment in satellite-based monitoring. Specifically, defendant contends that although defendants convicted of aggravated offenses are required to register as sex offenders for life, pursuant to N.C. Gen.Stat. § 14-208.23, his conviction for first degree sex offense is not an aggravated offense requiring lifetime satellite-based monitoring. The State concedes that the elements of defendant's first degree sex offense do not satisfy the standard for an aggravated offense established by statute. However, the State contends that defendant should still be required to register as a sex offender for a period of 30 years pursuant to N.C. Gen.Stat. § 14-208.7(a) and enroll in satellite-based monitoring.
Since defendant did not contest the court's finding at trial, he failed to preserve this issue for appeal. However, defendant submitted a petition for writ of certiorarion this issue, and we grant defendant's petition in the interest of justice. SeeN .C. R.App. P. 21(a)(1).
"A person who is a recidivist, who is convicted of an aggravated offense, or who is classified as a sexually violent predator shall maintain registration for the person's life." N.C. Gen.Stat. § 14-208.23 (2013). "Aggravated offense" is defined as any criminal offense that includes either of the following:
(i) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of any age through the use of force or the threat of serious violence; or (ii) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim who is less than 12 years old.
N.C. Gen.Stat. § 14-208.6(1a) (2013). A defendant with a reportable conviction "shall be required to maintain registration with the sheriff of the county" where he resides for at least 30 years. N.C. Gen.Stat. § 14-208.7(a) (2013). After ten years of registration, a defendant may petition the superior court to shorten his registration period. Id.A "reportable conviction" includes "[a] final conviction for an offense against a minor [.]" N.C. Gen.Stat. § 14-208.6(4)(a) (2013).
When a trial court determines whether a crime constitutes an aggravated offense, it is only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario giving rise to the conviction. In other words, the elements of the offense must fit within the statutory definition of aggravated offense.
State v. Green,--- N.C.App. ----, ----, 746 S.E.2d 457, 464 (2013). The elements of first degree sex offense pursuant to N.C. Gen.Stat. § 14-27.4(a)(1) require that a defendant engage in a sexual act with a victim under the age of thirteen years, and that the defendant be at least twelve years old and at least four years older than the victim. N.C. Gen.Stat. § 14-27.4(a)(1) (2013). This Court has held that first degree sex offense pursuant to N.C. Gen.Stat. § 14-27.4(a)(1) does not qualify as an aggravated offense. State v. Treadway,208 N.C.App. 286, 301, 702 S.E.2d 335, 348 (2010).
In the instant case, defendant was convicted of first degree sex offense pursuant to N.C. Gen.Stat. § 14-27.4(a)(1). The evidence at trial did not indicate that defendant used force or threatened Megan with serious violence. Additionally, the elements of first degree sex offense as provided in N.C. Gen.Stat. § 14-27.4(a)(1) do not require penetration. Therefore, defendant is correct that his first degree sex offense does not constitute an aggravated offense that requires lifetime sex offender registration and enrollment in satellite based monitoring. However, defendant's conviction for first degree sex offense with a child is a "reportable conviction" pursuant to N.C. Gen.Stat. § 14-208.6(4)(a). Therefore, we reverse the order and remand for the trial court to find that the offense was not an aggravated offense, and that defendant would be required to register as a sex offender and enroll in satellite-based monitoring upon his release from imprisonment for the appropriate time period pursuant to N.C. Gen.Stat. § 14-208.7(a).
IV. Conclusion
The trial court did not abuse its discretion in admitting the girls' testimony regarding defendant's conduct toward them. The testimony indicated that defendant exhibited a pattern of sexual misconduct over the course of several years, and the trial court gave appropriate limiting instructions both before Callie's testimony and at the close of all evidence. Therefore, we hold that there was no error at trial. However, since first degree sexual offense is not an aggravated offense, the trial court's order is reversed and remanded for the trial court to correct the error regarding the aggravated offense and defendant's sex offender registration and enrollment in satellite-based monitoring pursuant to the time prescribed in the North Carolina General Statutes.
NO ERROR AT TRIAL, REVERSED AND REMANDED FOR RESENTENCING.
Chief Judge McGEE and Judge McCULLOUGH concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from judgment and by writ of certiorari from order entered 6 November 2013 by Judge Susan E. Bray in Rockingham County Superior Court. Heard in the Court of Appeals 5 January 2015.

Pseudonyms are used to refer to all juveniles herein to protect their identities and for ease of reading.

All three girls are referred to by pseudonyms.