IN THE MATTER OF: D.B., H.B., and F.B., Minor Children.
No. COA09-1033.
Court of Appeals of North Carolina.
Filed March 2, 2010.
This case not for publication
Mary G. Holliday, for petitioner-appellee Jackson County Department of Social Services.
Carol Ann Bauer, for respondent-appellant mother.
Robert W. Ewing, for respondent-appellant father.
Teague, Campbell, Dennis & Gorham, L.L.P., by Robert C. Kerner, Jr., for the Guardian ad Litem to the respondent-appellee minor children.
CALABRIA, Judge.
Respondent-mother and respondent-father (collectively, "respondents") appeal adjudication and permanency planning orders entered 3 March and 20 May 2009 continuing custody of their minor children, D.B. ("Danielle"), F.B. ("Frances") (collectively "the girls"), and H.B. ("Harold") (collectively "the children"),[1] with the Jackson County Department of Social Services ("DSS"). After careful review, we affirm.

I. BACKGROUND
DSS started working with respondents on 27 September 2005. On 8 June 2007, DSS filed juvenile petitions alleging the children were abused and neglected. The children were initially placed with relatives; however, when the relatives were unable to continue caring for the children, DSS obtained non-secure custody and placed them in foster care. DSS filed amended juvenile petitions on 30 January 2008 that alleged the girls were abused and neglected juveniles, and that Harold was a neglected juvenile.
On 11 February 2009, the trial court held an adjudicatory hearing on the amended petitions. At the hearing, Detective Celeste Holleman ("Detective Holleman") of the Jackson County Sheriff's Department testified that her involvement with the family started in September of 2005 as a result of receiving a sex abuse report concerning the children. Detective Holleman initially interviewed the children at school and later interviewed respondents at home. During her interviews with Frances, Detective Holleman testified that Frances reported that she kissed respondents on the lips, that respondent-father let her kiss his "private part," that she kissed respondent-mother's breasts, that respondents took pictures of her naked and touched her private parts, and that respondent-father had sex with her while respondent-mother watched. Frances also drew pictures of respondent-father naked and of respondent-father's penis.
During Detective Holleman's interview with respondents, they maintained there had been no sexual abuse of the children. Detective Holleman interviewed respondents at their home, and described the condition of the home as:
There was food everywhere. There were dog feces. There were rat feces. There were clothes everywhere, clean, dirty, dirty dishes piled everywhere, food. It was just in need of some cleanliness.
Some of the food had been partially eaten and had mold on it and "might have been there for a little while." Detective Holleman stated that she could smell the dog feces and urine and that the feces "was on the floor, it was on the furniture, it was on the dirty clothes in the bedroom. It was everywhere, throughout the house." She added that she had to be careful where she stepped while walking in the home.
Detective Holleman requested permission to search respondents' home and respondent-father agreed to the search. Detective Holleman searched the home and found pornographic magazines, videos and DVDs. Another item that he found was a soft-cover book found between the mattress and box-spring of respondents' bed titled Family Letters. The book contained explicit stories involving sexual encounters between family members, including parents and their children, although the ages of the children were not stated. The trial court accepted a copy of the book into evidence over objection from counsel for respondent-father. Detective Holleman ultimately charged respondents with multiple counts of committing indecent liberties with a child and first-degree sex offense with a child. Those charges were still pending at the time of the adjudication hearing.
Additionally, DSS presented testimony at the adjudicatory hearing from Frances. Frances testified that she was currently in the fourth grade and no longer living with respondents because respondent-father "did something real bad, like, child abuse," to her. Frances stated that during the summer after she repeated second-grade, respondent-father "drug" her into his bedroom, put her on the bed, took her clothes off and then proceeded to have vaginal intercourse with her. She stated, "It hurt me real badly." During this incident, Danielle was lying on the floor of the bedroom and when respondent-father finished assaulting Frances, she saw him put Danielle on the bed, remove Danielle's clothing and place his penis near Danielle's "private parts." Frances could not see if respondent-father actually penetrated Danielle. When respondent-father finished with Danielle, Frances grabbed her sister and their clothing, ran to their bedroom, dressed, and ran outside to where their aunt lived. Frances testified that respondent-mother was standing in the doorway to the bedroom looking at Frances during both assaults. Frances stated that when respondent-father was assaulting her, she told him to stop, and that respondent-mother stood there and never said anything during the course of the events. Additionally, Frances saw respondents watch pornographic movies and saw the actors "do bad stuff together...all kinds of bad stuff like privates and all that on TV," including having intercourse. Frances stated that she wished to live with her foster family.
At the close of the adjudication hearing, the trial court concluded that the girls were abused juveniles and all three children were neglected juveniles. On 3 March 2009, the trial court entered its orders on adjudication finding the girls were abused juveniles and all three juveniles were neglected juveniles.
At the disposition hearing, Kimberly Davis ("Davis"), a foster care supervisor with DSS, testified that after her first visit to respondents' residence in September 2005, she became physically ill. Davis was subsequently diagnosed with an E. coli infection because she came into contact with feces. Susan Ward ("Ward"), a DSS social worker, testified DSS had made attempts to enter into a family services case plan with respondents, but through counsel, they indicated they would not be complying with anything requested of them, other than allowing home visits and cleaning up trash. DSS was not able to enter the home of respondents from January of 2006 until 30 March 2009. On 9 February 2009, Ward and another DSS employee attempted to make a home visit with respondents but nobody answered at respondents' residence. Ward testified that on the date of the attempted visit:
The [respondents'] yard was very littered with all kinds of different trash, broken glass, broken windshield. There were metal objects. I'm not sure what it was. There was a large dog, a rottweiler, in  on the front steps, and there was  it was fenced in, but the fence was a thin wire fence. I did not feel comfortable approaching the home. There was  immediately upon exiting the car, there was a foul odor in the air. There was some trash piled in bags in back of a pickup truck that we believe was probably broken down and not driveable.
...
It smelled of rotting food.
...
There were various metal objects throughout the property, beer cans. It was just generally littered.
DSS further presented evidence that Frances had difficulty with sexually acting out and getting along with peers, although she had shown improvement over the past year with her problems with sexually acting out. At the time of the disposition hearing, criminal charges were still pending against respondents and no date had been set for a criminal trial.
On 20 May 2009, the trial court's disposition order continued custody of the children with DSS, denied respondents visitation with the children, and set the permanent plan for the children as adoption. The trial court relieved DSS from having to make reasonable efforts to reunify the children with respondents and ordered DSS to file petitions seeking termination of respondents' parental rights to the children within sixty days. On 29 May 2009, respondents separately filed notice of appeal from the trial court's adjudication and disposition orders.

II. STANDARD OF REVIEW
Appellate review in a case arising from a trial court's adjudication of abuse or neglect is limited to "(1) whether the findings of fact are supported by `clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact[.]" In re T.H.T., 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (citation omitted), aff'd as modified, 362 N.C. 446, 665 S.E.2d 54 (2008); see also N.C. Gen. Stat. § 7B-805 (2007) ("The allegations in a petition alleging abuse, neglect, or dependency shall be proved by clear and convincing evidence."). "Clear and convincing evidence is evidence which should fully convince." In re J.A.G., 172 N.C. App. 708, 712, 617 S.E.2d 325, 329 (2005) (internal quotations and citation omitted). It is the province of the trial court to determine "the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject." In re Hughes, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985). "[T]he trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) (citations omitted). However, the trial court's conclusions of law in juvenile cases are subject to de novo review. See In re D.H., C.H., B.M., C.H. III, 177 N.C. App. 700, 703, 629 S.E.2d 920, 922 (2006).

III. RESPONDENT-FATHER'S APPEAL
Respondent-father first argues the trial court erred in overruling his objection to the admission of the book Family Letters on the ground that it was not relevant and that any probative value was substantially outweighed by the danger of unfair prejudice.
Relevant evidence is any evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007) ("Rule 401"). Generally, "all relevant evidence is admissible[.]" N.C. Gen. Stat. § 8C-1, Rule 402 (2007) ("Rule 402").
Rule 401 sets a standard to which trial judges must adhere in determining whether proffered evidence is relevant; at the same time, this standard gives the judge great freedom to admit evidence because the rule makes evidence relevant if it has any logical tendency to prove any fact that is of consequence. Thus, even though a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal.
State v. Wallace, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991) (citations omitted).
The North Carolina Juvenile Code defines an abused juvenile in pertinent part as:
Any juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker:
. . .
d. Commits, permits, or encourages the commission of a violation of the following laws by, with, or upon the juvenile: first-degree rape, as provided in G.S. 14-27.2; second degree rape as provided in G.S. 14-27.3; first-degree sexual offense, as provided in G.S. 14-27.4; second degree sexual offense, as provided in G.S. 14-27.5; sexual act by a custodian, as provided in G.S. 14-27.7; crime against nature, as provided in G.S. 14-177; incest, as provided in G.S. 14-178; preparation of obscene photographs, slides, or motion pictures of the juvenile, as provided in G.S. 14-190.5; employing or permitting the juvenile to assist in a violation of the obscenity laws as provided in G.S. 14-190.6; dissemination of obscene material to the juvenile as provided in G.S. 14-190.7 and G.S. 14-190.8; displaying or disseminating material harmful to the juvenile as provided in G.S. 14-190.14 and G.S. 14-190.15; first and second degree sexual exploitation of the juvenile as provided in G.S. 14-190.16 and G.S. 14-190.17; promoting the prostitution of the juvenile as provided in G.S. 14-190.18; and taking indecent liberties with the juvenile, as provided in G.S. 14-202.1;
N.C. Gen. Stat. § 7B-101(1) (2007). Here, the trial court concluded Frances and Danielle were abused juveniles because their parents had "committed three counts of Indecent Liberties and three counts of first degree Sex Offense with a Child, [these] being sex offenses in violation of the criminal law." Accordingly, we must determine whether the admission of the book, Family Letters, was relevant to the trial court's determination that the girls were abused juveniles because respondents had either committed, permitted, or encouraged certain sexual offenses against them.
Respondent-father argues that evidence of pornographic materials is not relevant if it is introduced for the sole purpose of tending to prove the character of the defendant in order to show that he acted in conformity therewith, and that in this instance, the only purpose for evidence of the book was "to prove that the Respondent Father sexually abused his children." Respondent-father argues that there is no evidence that he read the book, that he abused the children based on the book, or that "he devised a common scheme or plan to abuse his children from the book." Respondent-father is correct that this Court has held, in criminal cases, that "mere possession of pornographic materials does not tend `to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" State v. Smith, 152 N.C. App. 514, 522, 568 S.E.2d 289, 294 (2002) (quoting N.C. Gen. Stat. § 8C-1, Rule 401); see also State v. Delsanto, 172 N.C. App. 42, 53, 615 S.E.2d 870, 877 (2005) (holding it was error but not plain error to admit evidence of defendant's possession of pornographic magazines where "the State presented no evidence that defendant's possession of pornographic magazines and women's underwear played any part in the alleged offenses. Therefore, the evidence was not relevant to prove the charges against him and was merely impermissible character evidence."); State v. Bush, 164 N.C. App. 254, 261, 595 S.E.2d 715, 719 (2004) (finding error in admission of pornographic videotapes when there was "no evidence that defendant provided pornographic videotapes to [the victim] or employed the tapes to seduce [the victim]"). However, we do not agree that this case is controlled by Smith or Bush.
We would first note that this case is not a criminal prosecution, as distinguished from all the cases upon which respondent-father bases his arguments. Although Rule 401 applies in juvenile adjudications just as it does in a criminal prosecution, the factual determination which the trial court must make in a juvenile adjudication of abuse is different from the determination a jury must make in a criminal prosecution. Thus, the scope of the facts which may be relevant to that determination may be broader in a juvenile abuse adjudication than in a criminal prosecution. In fact, the potential relevance of the evidence in this case becomes obvious upon review of the Juvenile Petitions filed in this matter, as the petition alleges that on 27 September 2005, the Jackson County DSS received a report of sexual abuse of the children, including an allegation that "[respondent-mother] had shown to the reporter a book called "Family Fun" it [sic] shows how parents and children have sexual fun together." (RP 16, 24, 32) The entire purpose of the adjudication hearing is for the petitioner to present clear and convincing evidence to support the allegations of its petitions and for respondents to seek to attack or discredit that evidence and to present evidence in support of their own contentions, if they choose to do so. See N.C. Gen. Stat. § 7B-805 (2007) ("The allegations in a petition alleging abuse, neglect, or dependency shall be proved by clear and convincing evidence."). Thus, the evidence regarding Family Letters goes directly to support one of the allegations of the juvenile petitions as to the details of the sexual abuse of the children.
The inquiry as to the relevance of the evidence does not end with the fact that petitioner made an allegation regarding a book about "parents and children having sexual fun together[;]" the fact that an allegation is included in a petition does not automatically make it relevant. See Paris v. Aggregates, Inc., 271 N.C. 471, 482, 157 S.E.2d 131, 139-40 (1967) ("As a general rule no more need be proved, even though more be alleged, than enough to sustain the cause of action or defense relied on. In other words, only those allegations necessary to a recovery need be supported by proof. Surplusages in a pleading need not be proved. Thus, as a general rule, no proof is required of allegations which are irrelevant, immaterial, or unnecessary."). However, the determination the trial court must make in an adjudication of sexual abuse is broader in scope than the determination of guilt or innocence of a specific crime which a jury must make in a criminal prosecution. Although the trial court here did conclude that both respondent-father and respondent-mother "committed three counts of Indecent Liberties and three counts of first degree Sex Offense with a Child, [these] being sex offenses in violation of the criminal law[,]" the issue which the trial court had to consider was whether either parent, or both, had "commit[ted], permit[ted], or encourage[d] the commission of" an offense identified in N.C. Gen. Stat. § 7B-101(1) by, with, or upon the juveniles. Commission of a sexual offense requires only one perpetrator; permitting or encouraging an offense requires at least two perpetrators. The acts of sexual abuse alleged as to the girls involved both parents, in some instances with both committing the abuse together and in other instances with one parent committing the abuse and the other permitting or encouraging it. Thus, the Family Letters evidence was relevant to show that respondents each "encouraged" or "permitted" the other to commit a sexual offense against the children, and even a finding of encouraging or permitting the other parent to commit an offense upon a juvenile would have been sufficient for the trial court to find sexual abuse under N.C. Gen. Stat. §7B-101(1). Thus, the logic and rule of State v. Bush and State v. Smith do not control this juvenile adjudication of sexual abuse.
The book Family Letters was found under the very same mattress upon which respondent-father placed Frances and Danielle to commit sexual abuse upon them, in the bedroom of respondents. Even if the book was not in that same location at the time of the sexual activities between respondent-father and the girls, with respondent-mother looking on, it was in the possession of respondents shortly after the commission of the offenses. The book describes explicit sexual conduct between and among various combinations of family members, including fathers, sons, daughters, mothers, cousins, aunts, uncles and grandparents. The trial court noted in its findings of fact only a portion of the book which described sexual activities between a father and daughter and a portion titled "The Whole Family" which includes stories of sexual contact between sons and mothers, daughters and fathers, and sons and daughters. The trial court noted one particular passage in the story regarding the father and daughter, which included the daughter's statement that "I want to share how my dad and I innocently found ourselves in the tender loving situation that resulted in Dad teaching me what it's like for a woman for the first time. And the second and third and fourth, and so on." The ages of the daughter and father are not stated. It is true, as respondent-father argues, that these stories could be understood as occurring between an adult daughter and her father, but they could just as easily be understood as occurring between a juvenile daughter and her father. The people in the drawings in the book appear to be adults, but the book includes primarily text, not pictures. The book depicts sexual activity between family members, including fathers and daughters, as an enjoyable and loving activity which benefits all of the participants.
Respondent-father argues that there was no evidence that any of the children ever saw the book and thus it is not relevant, as there is no evidence it was used to encourage a child to participate in sexual activity. Respondent-mother argues that the book was "simply a dirty book hidden under the adults' mattress which depicted adults in various sex acts with other adults." However, evidence is relevant if "it has any logical tendency to prove any fact that is of consequence." State v. Wallace, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991). In the context of this case, which is a juvenile adjudication of sexual abuse involving participation of both parents, Family Letters did have some logical tendency to prove that respondents encouraged or permitted the sexual abuse of Frances and Danielle. Thus, the trial court did not err by finding that the book was relevant.
Respondent-father next argues that even if the book was relevant, it should have been excluded pursuant to N.C. Gen. Stat. § 8C-1, Rule 403 (2007) ("Rule 403"), as its probative value was substantially outweighed by danger of unfair prejudice. FB 14-15 This Court reviews the trial court's decision to admit or exclude evidence under Rule 403 for abuse of discretion. State v. Peterson, 361 N.C. 587, 602, 652 S.E.2d 216, 227 (2007) (citation omitted). "An abuse of discretion results when `the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" State v. Whaley, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008) (quoting Peterson, 361 N.C. at 602-03, 652 S.E.2d at 227).
Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2007). Additionally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007) ("Rule 404(b)"). However, the application of these rules differs in the context of a bench trial from that of a jury trial. Again, the cases respondent-father cites in support of his argument are criminal cases arising from jury trials. Here, we are considering findings of fact made by the trial judge, not a jury. "In a nonjury trial, in the absence of words or conduct indicating otherwise, the presumption is that the judge disregarded incompetent evidence in making his decision." Cogdill v. Highway Comm. and Westfeldt v. Highway Comm., 279 N.C. 313, 319, 182 S.E.2d 373, 377 (1963) (quoting City of Statesville v. Bowles, 278 N.C. 497, 502, 180 S.E.2d 111, 114-15 (1971)); General Metals v. Manufacturing Co., 259 N.C. 709, 712, 131 S.E.2d 360, 362 (1963); Bowen v. Bowen, 19 N.C. App. 710, 713, 200 S.E.2d 214, 216-17 (1973). The trial court's findings of fact will not be reversed unless based only on incompetent evidence. Bizzell v. Bizzell, 247 N.C. 590, 605, 101 S.E.2d 668, 678 (1958). Respondent-father must therefore overcome a presumption that the trial court disregarded the evidence of "Family Letters" to the extent that it might be considered as unfairly prejudicial.
Respondent-father has not noted any "words or conduct" of the trial court which indicate that the trial court relied upon the evidence from "Family Letters" in any manner which would indicate that respondent-father was unfairly prejudiced by the evidence. The trial court reviewed the entire book in camera and in its findings of fact mentioned only those portions of the book, as noted above, which dealt with sexual relationships within the family, including father, mother, and daughters. In addition, even if the entire book had been incompetent as evidence, respondent-father has failed to demonstrate any prejudice from the trial court's findings of fact as to "Family Letters." As discussed below, the court's findings and conclusions are amply supported by other competent evidence and thus respondent-father was not prejudiced, much less unfairly prejudiced, by the admission of the book at the adjudication hearing. See In re McMillon, 143 N.C. App. 402, 411, 546 S.E.2d 169, 175 (2001) ("Where there is competent evidence to support the court's findings, the admission of incompetent evidence is not prejudicial."). Accordingly, the trial court did not err in admitting the book into evidence, as it was relevant and respondent-father has not overcome the presumption that the trial court used this evidence in an appropriate manner.
Respondent-father next argues the trial court's findings of fact concerning the abuse of the girls were erroneous as there was insufficient competent evidence to support them. Respondent-father, however, does not specifically argue in his brief to this Court which of the trial court's findings of fact are unsupported by competent evidence, and instead presents an argument that the trial court's findings of fact are tainted by the admission of the book Family Letters. It is well established that "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C. R. App. P. 28(b)(6) (2009); see also In re P.M., 169 N.C. App. 423, 424, 610 S.E.2d 403, 404 (2005) (concluding findings of fact were binding on appeal where respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence"). Therefore, respondent-father has abandoned his factual assignments of error. Nevertheless, after reviewing the trial court's findings of fact, we hold the trial court's conclusion that the girls were abused juveniles is supported by sufficient findings of fact which in turn are supported by clear and convincing evidence.
The trial court made the following findings of fact regarding the abuse of Frances and Danielle:
8. That [Frances] stated in her initial interviews on September 27, 2005 and September 28, 2005 stated [sic] and the Court finds as fact that she had touched her father's private parts, had kissed her mother's "boobies" and touched her father's "worm".
. . .
10. That [Frances] stated during an interview on August 9, 2007, and also in testimony during the hearing conducted this date, and the Court finds as fact, that during the summer after [Frances] repeated the second grade, her father, the Respondent, [] dragged her by her hands into the bedroom he shared with the Respondent Mother. He put her on the bed, removed his clothes and all of her clothes, and put what she calls his "worm" in her private parts. Her private hurts badly. She was crying. The Respondent Mother, [], was present in the doorway of the bedroom, and saw this happen. [Frances] was crying and told her father to stop. Her younger sister, [Danielle], was on the floor of the bedroom, when this happened to [Frances]. That when the Respondent Father was finished with [Frances], he put [Danielle] on the bed, removed her clothes, and did the same thing to her that he had just done to [Frances]. [Danielle] was crying and saying "Stop". The Respondent Mother was in the room when this happened and did nothing to intervene or stop what was going on. When this was over, [Frances] grabbed her clothes and her sister's clothes. They got dressed and when [sic] to their aunt's house.
. . .
12. That the Court received into evidence DSS Exhibits Two and Three, both drawings made by [Frances] during her interview on August 9, 2007. These drawings are very graphic concerning the male penis, which is what [Frances] says was her father's "worm". When [Frances] drew the penis that appears in Exhibit No. Two, she stated that it looked wrinkled. During her testimony today she circled the male penis in DSS Exhibit No. Two, which [she] calls her father's "worm", without any reservation.
These findings of fact are supported by the testimony of Frances and Detective Holleman at the adjudication hearing. These findings of fact in turn support the trial court's conclusion of law that the girls were abused juveniles.
Respondent-father lastly argues that the trial court's findings of fact are insufficient to support its conclusion of law that all three children were neglected juveniles based upon the uncleanliness of their home. We disagree.
The North Carolina Juvenile Code defines a neglected juvenile, in part, as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare . . . . In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where . . . another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen. Stat. § 7B-101(15) (2007). Additionally, "this Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." In re Safriet, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (quotations and citations omitted). However, "[w]here there is no finding that the juvenile has been impaired or is at substantial risk of impairment, there is no error if all the evidence supports such a finding." In re Padgett, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003) (citation omitted).
Here, the trial court concluded, "[t]hat, as set forth in the above findings of fact, all three Juveniles are neglected juvenile(s), as defined by N.C.G.S. 7B-101(15), in that they lived in an environment injurious to their welfare." As respondent-father notes in his brief to this Court, the trial court's conclusion of law does not specify whether the environment injurious to the children's welfare is based on the sexual abuse of the girls or on the uncleanliness of the home. As discussed above, it is clear the children lived in a home where a sibling has been subjected to sexual abuse by an adult who regularly lived in the home. Further, the trial court found:
9. That on September 27, 2005, when Detective Holleman was at the home of the Respondent Parents she observed food everywhere in the house. The food was opened and some partially eaten. Some food had mold on it[.] The interior of the house smelled like dog feces and urine. There were dog feces and urine on the furniture. There were dog and rat feces on the floor of every room, including the Respondent Parents' bedroom, to the extent that you had to be careful where you stepped. There were also rat feces and dirty clothes in the home. The dirty clothes were everywhere.
This finding of fact further supports the trial court's conclusion of law that the children were neglected juveniles in that they lived in an environment injurious to their welfare due to the extreme uncleanliness of their home. While we agree with respondent-father that the trial court failed to make a finding of fact that the children had been impaired or were at substantial risk of impairment, there is no error in the present case as all the evidence would support such a finding.

IV. RESPONDENT-MOTHER'S APPEAL
Similar to respondent-father, respondent-mother also first argues the trial court erred in admitting the book Family Letters into evidence because the book was not relevant and the probative value of the book was substantially outweighed by its prejudicial value. Unlike respondent-father, however, respondent-mother did not object to the admission of the book at the adjudication hearing and has thus waived review of this issue on appeal. N.C. R. App. P. 10(b)(1) (2009) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). Respondent-mother acknowledges that her counsel failed to object to the admission of the book and argues the failure to object constitutes ineffective assistance of counsel.
The North Carolina Juvenile Code provides that "[i]n cases where the juvenile petition alleges that a juvenile is abused, neglected, or dependent, the parent has the right to counsel and to appointed counsel in cases of indigency unless that person waives the right." N.C. Gen. Stat. § 7B-602(a) (2007). "This right to counsel also includes the right to effective assistance of counsel." In re S.C.R., ___ N.C. App. ___, ___, 679 S.E.2d 905, 909 (2009) (citing In re Oghenekevebe, 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996)). "To prevail in a claim for ineffective assistance of counsel, respondent must show: (1) her counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) her attorney's performance was so deficient she was denied a fair hearing." In re J.A.A. & S.A.A., 175 N.C. App. 66, 74, 623 S.E.2d 45, 50 (2005) (citing Oghenekevebe, 123 N.C. App. at 436, 473 S.E.2d at 396). As discussed above, the trial court did not err in its admission of the book Family Letters, nor was respondent-mother prejudiced by the admission of the book. The trial court's conclusion that the girls are abused juveniles is supported by findings of fact based upon other competent evidence, namely the testimony of Frances and Detective Holleman. Accordingly, even if the performance of counsel for respondent-mother fell below an objective standard of reasonableness due to his failure to object to the admission of the book, respondent-mother was not denied a fair hearing due to the lack of the objection, and respondent-mother cannot prevail on her claim of ineffective assistance of counsel.
Respondent-mother also argues the trial court erred in making findings of fact number six, seven, eight, ten, eleven, twelve, twenty and twenty-one in its adjudication order because these findings of fact are not supported by clear, cogent, and convincing evidence. Respondent-mother also contends that findings of fact number twenty and twenty-one are, in part, conclusions of law which, along with the trial court's conclusion of law number two, are not supported by the court's findings of fact. We address respondent-mother's arguments in turn.
In findings of fact number six and seven, the trial court found:
6. That on September 27, 2005 both Respondent Parents denied to Detective Holleman that the juveniles were sexually abused. [Respondent-father] consented to a search of the residence. A search was conducted by law enforcement and the following items were found in the residence: approximately ten to fifteen adult movies were found in the bedroom and some adult magazines were found in the bedroom of the Parents, in the living room and in the bathroom. Underneath the mattress and on top of the box spring of the Respondent Parents' bed, a book entitled "Family Letters" was discovered. The Court allowed this book into evidence as the Department's Exhibit No. Five. In that book are contained stories of sexual acts between family members and specifically Part Four entitled "parents" on page five, contains the following language, "I want to share how my dad and I innocently found ourselves in a tender loving situation that resulted in Dad teaching me what it is like for a woman for the first time. And the second and the third and the fourth and so on." The age of this daughter is not disclosed by the book.
7. That in the next part of the book on page twenty it is entitled, "The Whole Family" and contains stories about sex between daughters and fathers, between sons and mothers and between sons and daughters. But, the children appear to be over the age of eighteen years in these stories.
While we note that respondent-mother waived review of the admissibility of the book Family Letters on appeal, as discussed above in respondent-father's appeal, the trial court did not err by admitting the book into evidence. Thus, the trial court's description of the book in findings of fact number six and seven is supported by clear and convincing evidence. In addition, neither of these findings of fact are necessary to support the trial court's conclusions of law that the children were abused and neglected, so respondent-mother was not prejudiced by the inclusion of these findings in the trial court's order.
In finding of fact number eight, the trial court found:
8. That [Frances] stated in her initial interviews on September 27, 2005 and September 28, 2005 stated [sic] and the Court finds as fact that she had touched her father's private parts, had kissed her mother's "boobies" and touched her father's "worm".
Respondent-mother argues this finding of fact is supported only by the testimony of Detective Holleman, which is hearsay testimony and thus inadmissible. Respondent-mother acknowledges that neither trial counsel for respondents objected to Detective Holleman's testimony, and thus she has waived review of this question on appeal. N.C. R. App. P. 10(b)(1) (2009).
Respondent-mother also argues that the trial court's findings of fact number eight, ten, eleven and twelve are based upon the "unreliable" testimony of the juvenile, Frances, as shown by discrepancies between Frances' testimony at the hearing and that of Detective Holleman when Detective Holleman testified regarding statements made by Frances during the investigatory interviews. Again, we note that respondent-mother did not object at the adjudication hearing concerning the competency of Frances to testify, and in closing arguments her trial counsel specifically stated that he was not attacking Frances' credibility. Further, this Court has stated:
In a nonjury trial, it is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given their testimony. If different inferences may be drawn from the evidence, the trial judge must determine which inferences shall be drawn and which shall be rejected.
In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365-66 (2000)(citation omitted); see also In re S.C.R., ___ N.C. App. at ___, 679 S.E.2d at 909 ("If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." (quotations and citations omitted)). Thus, it was for the trial court to determine the credibility of Frances' testimony, and its findings based on Frances' testimony are binding on appeal. See In re Whisnant, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (stating that it is the trial judge's duty to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom"). Findings of fact eight, ten, eleven and twelve are supported by the clear and convincing testimony of Frances and Detective Holleman, and are thus binding on this Court.
Respondent-mother further argues that, in the adjudication order, the trial court's findings of fact number twenty and twenty-one are not supported by clear and convincing evidence and are in fact conclusions of law, which, along with the trial court's conclusion of law number two, are not supported by its findings of fact. These findings of fact and conclusion of law state:
20. That the Juveniles [Frances and Danielle] are abused juveniles as defined by N.C.G.S. 7B-101(1)(d) in that their parent has committed three counts of indecent liberties and first degree sex offense with a child against each Juvenile, these being sex offenses in violation of the criminal law. Both [Frances and Danielle] are neglected juveniles as defined by N.C.G.S. 7B-101(15) in that they lived in an environment injurious to their welfare.
21. That the Juvenile, [Harold], is a neglected juvenile as defined by N.C.G.S. 7B-101(15) as he lived in an environment injurious to his welfare.
. . .
2. That, as set forth in the above findings of fact, all three Juveniles are neglected juvenile(s), as defined by N.C.G.S. 7B-101(15), in that they lived in an environment injurious to their welfare. [Frances and Danielle] are also abused juveniles as defined by N.C.G.S. 7B-101(1[)](d), in that their parent has committed three counts of Indecent Liberties and three counts of first degree Sex Offense with a Child, there [sic] being sex offenses in violation of the criminal law.
Respondent-mother argues the trial court erred in concluding she committed criminal acts because at the time of the hearing, while criminal charges were pending, she had not been convicted of committing any crime. We agree with respondent-mother that findings of fact number twenty and twenty-one are more properly classified as conclusions of law; however, we conclude that they, along with conclusion of law number two, are amply supported by the trial court's findings of fact.
"The purpose of abuse, neglect and dependency proceedings is for the court to determine whether the juvenile should be adjudicated as having the status of abused, neglected or dependent." In re J.S., 182 N.C. App. 79, 86, 641 S.E.2d 395, 399 (2007).
The purpose of the adjudication and disposition proceedings should not be morphed on appeal into a question of culpability regarding the conduct of an individual parent. The question this Court must look at on review is whether the court made the proper determination in making findings and conclusions as to the status of the juvenile.
Id. As discussed above, an abused juvenile is defined, in part, as one whose parent "[c]ommits, permits, or encourages the commission of" first-degree sexual offense or taking indecent liberties with or upon the juvenile. N.C. Gen. Stat. § 7B-101(1)(d) (2007). The statute does not require that the parent be convicted of committing the criminal offenses, only that the trial court find that the parent "[c]ommits, permits, or encourages the commission of" the criminal offense. Id.
Under North Carolina Criminal Law, a person commits first-degree sex offense where the person engages in a sexual act:
(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim; or
(2) With another person by force and against the will of the other person, and:
a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or
b. Inflicts serious personal injury upon the victim or another person; or
c. The person commits the offense aided and abetted by one or more other persons.
N.C. Gen. Stat. § 14-27.4(a) (2007). Similarly, a person takes indecent liberties with a child where that person is:
16 years of age or more and at least five years older than the child in question, [and] either:
(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.
N.C. Gen. Stat. § 14-202.1(a) (2007). Here, the evidence presented by Frances and Detective Holleman, and the trial court's findings of fact regarding the sexual abuse of Frances and Danielle, support the trial court's conclusion that respondents committed, permitted, or encouraged the commission of sexual acts with the girls, both children under the age of thirteen years, and also willfully took immoral, improper, or indecent liberties with the girls for the purpose of arousing or gratifying sexual desire. The trial court's conclusion that all three children are neglected juveniles is supported by its findings of fact as discussed in respondent-father's appeal above.
Respondent-mother lastly argues that, in the trial court's disposition order, the trial court's findings of fact number six, seven, ten, eleven, twelve, and twenty-three are not supported by clear and convincing evidence and that finding of fact number twenty-three is in fact a conclusion of law, which, along with the trial court's conclusion of law number two, is not supported by its findings of fact. The challenged findings of fact in the disposition order are, respectively, the same as findings of fact six, seven, eight, ten, eleven, twelve, and twenty from the adjudication order and respondent argues they are not supported by clear and convincing evidence for the same reasons as argued in the adjudication order.
For the reasons stated above in our review of the findings of fact in the adjudication order, findings of fact six and seven in the disposition order are supported by competent evidence as the book Family Letters was properly admitted, and findings of fact eight, ten, eleven, and twelve are supported by clear and convincing evidence. Similarly, as discussed above, we treat finding of fact number twenty-three as a conclusion of law and find it, along with conclusion of law number two, is supported by the trial court's findings of fact.

V. CONCLUSION
For the reasons as stated above, we affirm the adjudication and disposition orders of the trial court concluding that Frances and Danielle are abused juveniles and that Frances, Danielle, and Harold are neglected juveniles. In addition, we affirm the permanent plan as adoption.
Affirmed.
Judges STEPHENS and STROUD concur.
Report per Rule 30(e).
NOTES
[1] The children will be referred to by pseudonyms to protect their identities and for ease of reading.